

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED

OCT 2 4 2002

MICHAEL E. KUNZ, Clerk

By _CMC_ Dep. Clerk

UNITED STATES OF AMERICA    :

   :

DATE FILED:

v.    :

CRIMINAL NO. 02 - 172

COURTNEY CARTER,    :
   a/k/a "C-MURDER,"
   a/k/a "C,"
   a/k/a "JAMAICAN COURTNEY,"    :
JAMES PATTERSON,    :
   a/k/a "GIOVANNI,"
   a/k/a "GIOVANNI LOVE,"    :
   a/k/a "GL,"
JAMAL MORRIS,    :
   a/k/a "DAY-DAY,"
   a/k/a "DAY DOLLARS,"    :
   a/k/a "DAWAN MORRIS,"
   a/k/a "DAYNAN MORRIS,"    :
JERMAINE SINGLETON,
   a/k/a "BRIAN DAVIS,"    :
   a/k/a "JAB,"
RAKYYM HETHERINGTON,    :
   a/k/a "RAK,"
OMAR BENNETT,    :
ZACHARY SPENCE,
   a/k/a "ZACK,"    :
CHRISTOPHER WILLIAMS,
   a/k/a "SHAKY,"
   a/k/a "SHAKE,"    :
CHRISTOPHER SMITH,
   a/k/a "JUGHEAD,"    :
JAMES HILL,
   a/k/a "JAMES HALL,"
   a/k/a "JAMES THOMPSON,"    :
MALIK WILLIAMS,
   a/k/a "KENNETH WILLIAMS,"    :
ANTON TYLER
   a/k/a "ANT,"    :
M.B. TERRELL,
   a/k/a "MARK TERRELL,"

VIOLATIONS: 21 U.S.C. § 846
(Conspiracy to distribute more than 5
kilograms of cocaine and more than 50
grams of cocaine base ("crack")- 1 Count)
21 U.S.C. § 848(b)
(Continuing criminal enterprise - 1
Count)
21 U.S.C. § 841(a)(1)
(Distribution or possession with intent to
distribute cocaine or cocaine base
("crack") - 27 Counts)
21 U.S.C. § 860(a)
(Distribution or possession with intent to
distribute cocaine or cocaine base
("crack") within 1,000 feet of a school -
20 Counts)
21 U.S.C. § 860(c)
(Employing children to distribute drugs
Near schools and playgrounds - 2 Counts)
21 U.S.C. § 843(b)
(Use of a communication facility in
furtherance of a drug crime - 33 Counts)
21 U.S.C. § 856
(Establishment of a manufacturing
facility - 4 Counts)
18 U.S.C. § 924(c)
(Use of a firearm during commission of a
drug crime - 10 Counts)
18 U.S.C. § 924(o)
(Conspiracy to use a firearm during
commission of a drug crime - 1 Count)
18 U.S.C. § 922(j)
(Possession of a stolen firearm - 1 Count)
18 U.S.C. § 922(g)(1)
(Possession of a firearm by a convicted

| | | |
|---|---|---|
| a/k/a "MARC TERRELL," | : | felon - 6 Counts) |
| a/k/a "MARK MILLER," | | 18 U.S.C. § 1956(h) |
| a/k/a "KEVIN MILLER," | : | (Conspiracy to commit money laundering |
| MARIO JEFFERIES, | | - 1 Count) |
| a/k/a "YOUNG SNOOPY," | : | 18 U.S.C. § 1956(a)(1)(B)(i) |
| RASOOL LEWIS, | | (Money laundering - 28 Counts) |
| a/k/a "SOOL," | : | 18 U.S.C. § 2 |
| a/k/a "MAKEL SHABAZZ," | | (Aiding and abetting) |
| a/k/a "AL-KAREM LEWIS," | : | 21 U.S.C. § 853 |
| THOMAS PENNAVARIA, | | (Criminal forfeiture) |
| a/k/a "TOMMY," | : | 18 U.S.C. § 982 |
| VELMA PATTERSON, | | (Criminal forfeiture) |
| STEPHANIE HAMMOND, | : | |
| JOHN DAIR, | | |
| a/k/a "JOHN BOYD," | : | |
| a/k/a "JOHN BOY," | | |
| a/k/a "JB," | : | |
| TRACEY TEAGLE, | | |
| JOHN MINGIA, | : | |
| a/k/a "JOHN THOMPSON," | | |
| a/k/a "MAIJON MINGIA," | : | |
| ALAN CAIN, | | |
| a/k/a "JEROME VIEW," | : | |
| a/k/a "BABY AL," | | |
| a/k/a "LITTLE AL," | : | |
| ABDUL HOWARD, | | |
| a/k/a "RODNEY BELL," | : | |
| a/k/a "SALEEM RACKMAN," | | |
| a/k/a "ABDUL TALLEY," | : | |
| ROBERT HOLMES, | | |
| a/k/a "BOXING BOB," | : | |
| NATHANIEL MONTGOMERY, | | |
| a/k/a "SHU SHU," | : | |
| RENARD BROWN, | | |
| a/k/a "NARD," | : | |
| RODNEY MURRAY, | | |
| a/k/a "RONALD MILLER," | : | |
| RAABITAH REYNOLDS, | | |
| a/k/a "RAABITAH GRAY," | : | |
| a/k/a "ROBERT REYNOLDS," | | |
| a/k/a "ROBERT JOHNSON," | : | |
| TYREIK GOLDEN, | | |
| KAREEM SANDERS, | : | |

2

a/k/a "REEM,"                          :
AMEEN LEE,
  a/k/a "MEENIE,"                      :
FREDERICK LEACH,
  a/k/a "FL,"                          :
  a/k/a "LITTLE FRED,"
TIMOTHY JOHNSON,                       :
  a/k/a "TIMMY,"
EDGAR LAWRENCE,                        :
BRAHEEM JACKSON,
  a/k/a "RYAN JACKSON,"                :
  a/k/a "RAYMOND GOOD,"
  a/k/a "ROBERT COOKE,"                :
  a/k/a "MIRA ROBINSON,"
MARCUS WILLIAMS,                       :
  a/k/a "JAMAR MOFIELD,"
  a/k/a "MARCUS ROLLERSON,"            :
DAVID WEST
  a/k/a "MICHAEL ROLLERSON"

## THIRD SUPERSEDING INDICTMENT

## COUNT 1

THE GRAND JURY CHARGES THAT:

1.     From in or about a date unknown to the grand jury beginning at least in 1997, through on or about February 26, 2002, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**
**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**

a/k/a "GL,"
JAMAL MORRIS,
a/k/a/ "DAY-DAY,"
a/k/a "DAY DOLLARS,"
a/k/a "DAWAN MORRIS,"
a/k/a "DAYNAN MORRIS;"
JERMAINE SINGLETON,
a/k/a "BRIAN DAVIS,"
a/k/a "JAB,"
RAKYYM HETHERINGTON,
a/k/a "RAK,"
OMAR BENNETT,
ZACHARY SPENCE,
a/k/a "ZACK,"
CHRISTOPHER WILLIAMS,
a/k/a "SHAKY,"
a/k/a "SHAKE,"
CHRISTOPHER SMITH,
a/k/a "JUGHEAD,"
JAMES HILL,
a/k/a "JAMES HALL,"
a/k/a "JAMES THOMPSON,"
KENNETH WILLIAMS,
a/k/a "MALIK WILLIAMS,"
ANTON TYLER,
a/k/a "ANT,"
M.B. TERRELL,
a/k/a "MARK TERRELL,"
a/k/a "MARC TERRELL,"
a/k/a "MARK MILLER,"
a/k/a "KEVIN MILLER,"
MARIO JEFFERIES,
a/k/a "YOUNG SNOOPY,"
RASOOL LEWIS,
a/k/a "SOOL,"
a/k/a "MAKEL SHABAZZ,"
a/k/a "AL-KAREM LEWIS,"
VELMA PATTERSON,
STEPHANIE HAMMOND,
JOHN DAIR,
a/k/a "JOHN BOYD,"
a/k/a "JOHN BOY,"
a/k/a "JB,"

4

TRACEY TEAGLE,
JOHN MINGIA,
a/k/a "JOHN THOMPSON,"
a/k/a "MAIJON MINGIA,"
ALAN CAIN,
a/k/a "JEROME VIEW,"
a/k/a "BABY AL,"
a/k/a "LITTLE AL,"
ABDUL HOWARD,
a/k/a "RODNEY BELL,"
a/k/a "SALEEM RACKMAN,"
a/k/a "ABDUL TALLEY,"
ROBERT HOLMES,
a/k/a "BOXING BOB,"
NATHANIEL MONTGOMERY,
a/k/a "SHU SHU,"
RENARD BROWN,
a/k/a "NARD,"
RODNEY MURRAY,
a/k/a "RONALD MILLER,"
RAABITAH REYNOLDS,
a/k/a "RAABITAH GRAY,"
a/k/a "ROBERT REYNOLDS,"
a/k/a "ROBERT JOHNSON,"
TYREIK GOLDEN,
KAREEM SANDERS,
a/k/a "REEM,"
AMEEN LEE,
a/k/a "MEENIE,"
FREDERICK LEACH,
a/k/a "FL,"
a/k/a "LITTLE FRED,"
TIMOTHY JOHNSON,
a/k/a "TIMMY," and
EDGAR LAWRENCE
BRAHEEM JACKSON,
a/k/a "RYAN JACKSON,"
a/k/a "RAYMOND GOOD,"
a/k/a "ROBERT COOKE,"
a/k/a "MIRA ROBINSON,"
MARCUS WILLIAMS,
a/k/a "JAMAR MOFIELD,"
a/k/a "MARCUS ROLLERSON,"

**DAVID WEST,**
**a/k/a "MICHAEL ROLLERSON"**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and intentionally distribute in excess of 5 kilograms, that is, in excess of 600

kilograms, of a mixture or substance containing a detectable amount of cocaine and in excess of

50 grams, that is, in excess of 400 kilograms, of a mixture or substance containing a detectable

amount of cocaine base ("crack"), Schedule II controlled substances, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(A).

# MANNER AND MEANS OF THE CONSPIRACY

At all times material to this indictment:

(A)    The **COURTNEY CARTER, a/k/a "C," a/k/a "C-MURDER," a/k/a "JAMAICAN COURTNEY,"** narcotics organization (the "CCO") was an organization consisting of numerous members who manufactured "crack" from cocaine powder and distributed controlled substances, including cocaine and cocaine base ("crack") in Philadelphia and Coatesville, in the Eastern District of Pennsylvania, Wilmington, in the District of Delaware, and in Greensburg, Murrysville, and other locations in the Western and Middle Districts of Pennsylvania.

(B)    The CCO, during the time period referred to in this indictment, distributed more than 600 kilograms of cocaine and more than 400 kilograms of cocaine base ("crack") and had gross revenues that exceeded $24,000,000.  The cocaine was sold in "weight" quantities ranging from one ounce or less to whole kilogram quantities, and the cocaine base ("crack") not sold as "weight" quantities was packaged for street sale in vials or plastic packets.  The ultimate goal of the members of the CCO was to sell all of the cocaine powder as cocaine base ("crack") at the street (retail) level.

(C)    The CCO was owned, organized, controlled, supervised, financed and operated by defendant **COURTNEY CARTER, a/k/a "C," a/k/a "C-MURDER," a/k/a "JAMAICAN COURTNEY,"** (hereafter **COURTNEY CARTER**).

(D)    The CCO stored, manufactured, prepared and distributed cocaine base ("crack") from in or near buildings owned and/or controlled by **COURTNEY CARTER, JAMES PATTERSON, a/k/a "Giovanni," a/k/a "Gio," a/k/a "Giovanni Love," a/k/a "GL;"**

7

(hereafter JAMES PATTERSON); JAMAL MORRIS, a/k/a/ "Day-Day," a/k/a "Day Dollars," a/k/a "Dawan Morris," a/k/a "Daynan Morris," (hereafter JAMAL MORRIS); JERMAINE SINGLETON, a/k/a "Brian Davis," a/k/a "Jab," (hereafter JERMAINE SINGLETON); ZACHARY SPENCE, a/k/a "Zack," (hereafter ZACHARY SPENCE); CHRISTOPHER WILLIAMS, a/k/a "Shaky," a/k/a "Shake," (hereafter CHRISTOPHER WILLIAMS); JAMES HILL, a/k/a "James Hall," a/k/a "James Thompson," (hereafter JAMES HILL); KENNETH WILLIAMS, a/k/a "Malik Williams," (hereafter KENNETH WILLIAMS); BRAHEEM JACKSON, a/k/a "Ryan Jackson," a/k/a "Raymond Good," a/k/a "Robert Cooke," a/k/a "Mira Robinson," (hereafter BRAHEEM JACKSON); ANTON TYLER, a/k/a "Ant," (hereafter ANTON TYLER); M.B. TERRELL, a/k/a "Mark Terrell," a/k/a "Marc Terrell," a/k/a "Mark Miller," a/k/a "Kevin Miller," (hereafter M.B. TERRELL); MARIO JEFFERIES, a/k/a "Young Snoopy," (hereafter MARIO JEFFERIES); RASOOL LEWIS, a/k/a "Sool," a/k/a "Makel Shabazz," a/k/a "Al-Karem Lewis," (hereafter RASOOL LEWIS); VELMA PATTERSON; STEPHANIE HAMMOND; JOHN MINGIA, a/k/a "John Thompson," a/k/a "Maijon Mingia," (hereafter JOHN MINGIA); ALAN CAIN, a/k/a "Jerome View," a/k/a "Baby Al," a/k/a "Little Al," (hereafter ALAN CAIN); Rodney Murray, a/k/a "Ronald Miller," (hereafter RODNEY MURRAY); RAABITAH REYNOLDS, a/k/a "Raabitah Gray," a/k/a "Robert Reynolds," a/k/a "Robert Johnson," (hereafter RAABITAH REYNOLDS); KAREEM SANDERS, a/k/a "Reem," (hereafter KAREEM SANDERS); and AMEEN LEE, a/k/a "Meenie," (hereafter AMEEN LEE).

 These buildings included at various times the following locations in Philadelphia,

8

and elsewhere in the Eastern District of Pennsylvania:

      (1)  1117 E. Rittenhouse Street, Philadelphia

      (2)  814 Pleasant Road, Yeadon

      (3)  7600 Stenton Avenue, Apartment 16-E, Philadelphia

      (4)  5861 Walton Street, Philadelphia

      (5)  5549 Osage Avenue, Philadelphia

      (6)  215 S. 58th Street, Philadelphia

      (7)  5546 Chancellor Street, Philadelphia

      (8)  5044 Haverford Avenue, Philadelphia

      (9)  5437 Regent Street, Philadelphia

      (10) 63 N. Conestoga Street, Philadelphia

      (11) 121 N. 55th Street, Philadelphia

      (12) 110 N. 55th Street, Philadelphia

      (13) 5660 Cherry Street, Philadelphia

      (14) 2416 N. 15th Street, Philadelphia

      (15) 112 N. Conestoga Street, Philadelphia

      (16) 636 N. Brooklyn Street, Philadelphia

      (17) 250 Beverly Drive, Apt. A-18, Upper Darby *C-22*

      (18) 29 N. 53rd Street, Philadelphia

      (19) 3902 City Line Avenue, Apartment B910

      (20) 1801 Buttonwood Street (Museum Towers) Apt. 1203

(E)     The CCO employed various workers whose duties included the following:

9

(1)   First-level supervisors, who assisted in the delivery of weight quantities of cocaine, "cooked" cocaine into cocaine base ("crack") and collected for drug sales.

(2)   Corner managers, who directly controlled one or more street corner sales operations.

(3)   Drivers, who provided transportation for the top members of the organization.

(4)   Enforcers, who protected drug sales locations from encroachment by other drug traffickers, and who collected money for drug sales, by force if necessary.

(5)   Street level sellers, who worked the various shifts selling cocaine base ("crack") at various street corner locations.

(F)   At various times during the conspiracy, the members of the CCO controlled the street corner sales of cocaine base ("crack") at the following locations in Philadelphia, and elsewhere:

(1)   Ithan and Locust

(2)   56th and Catharine

(3)   59th and Catharine

(4)   60th and Market

(5)   54th and Sansom

(6)   600 N. Brooklyn

(7)   55th and Market

(8)   56th and Arch

(9)   54th and Osage

10

(10)  54th and Addison

(11)  61st and Arch

(12)  50th and Haverford

(13)  54th and Race

(14)  55th and Vine

(15)  52nd and Market

(16)  53rd and Market

(17)  400 Creighton Street

(18)  51st and Funston

(G)   Members of the CCO routinely used physical violence and threats of violence to: (1) collect for drug debts owed, (2) retaliate for "rip-offs" and robberies of drug proceeds by rival drug groups, and for kidnappings of CCO family members by rival drug dealers, and (3) deter and eliminate competition from other drug dealers.

(H)   Members of the CCO known and unknown to the grand jury used money obtained from the sale of cocaine and cocaine base ("crack") to rent apartments and houses, buy real estate, lease and purchase luxury cars, and finance vacations and gambling junkets to Atlantic City, Las Vegas, and elsewhere.

## MEMBERS OF THE ORGANIZATION

2.    Defendant **COURTNEY CARTER** founded, organized, controlled, supervised, managed, financed and operated the CCO.  **COURTNEY CARTER** and others known and unknown to the grand jury would obtain kilogram quantities of cocaine hydrochloride in New York and elsewhere, which would be transported to Philadelphia, where it would either

11

be sold as cocaine powder or would be converted or "cooked" into cocaine base ("crack") and then sold through various distributors. **COURTNEY CARTER** distributed the cocaine hydrochloride directly to **JAMES PATTERSON, JAMAL MORRIS,** and **JERMAINE SINGLETON,** and to **RAKKYM HETHERINGTON** and **OMAR BENNETT** in Greensburg, PA. **ZACHARY SPENCE** worked directly for **COURTNEY CARTER** as a driver and delivery man. In addition, **COURTNEY CARTER** indirectly oversaw numerous individuals who worked for **JAMES PATTERSON** and **JAMAL MORRIS,** including **CHRISTOPHER WILLIAMS, ANTON TYLER, MALIK WILLIAMS, M.B. TERRELL,** and **MARIO JEFFERIES**.

      3.    **JAMES PATTERSON** cooked cocaine into cocaine base ("crack") at a variety of locations in and around Philadelphia, and distributed the cocaine base ("crack") to numerous street corner operations in Philadelphia. **JAMES PATTERSON** frequently delivered cocaine and/or cocaine base ("crack") directly to the street managers at these locations, or delegated the delivery to mid-level managers.

      (A)  **CHRISTOPHER WILLIAMS** worked directly for **JAMES PATTERSON** running the street corner operations including but not limited to the following locations in Philadelphia:

      1.    Ithan and Locust Streets. Among others known and unknown to the grand jury, **ABDUL HOWARD**, a/k/a **"RODNEY BELL,"** a/k/a **"SALEEM RACKMAN,"** a/k/a **"ABDUL TALLEY,"** (hereafter **ABDUL HOWARD**); **ROBERT HOLMES**, a/k/a **"BOXING BOB"** (hereafter **ROBERT HOLMES**);

NATHANIEL MONTGOMERY, a/k/a "SHU SHU," (hereafter NATHANIEL MONTGOMERY); ALAN CAIN and RENARD BROWN a/k/a "Nard" (hereafter RENARD BROWN) worked at this location, as well as the area surrounding Ithan and Locust.

2.   600 N. Brooklyn Street. MALIK WILLIAMS controlled this corner, where BRAHEEM JACKSON, MARCUS WILLIAMS, a/k/a "Jamar Mofield," a/k/a "Marcus Rollerson," (hereafter MARCUS WILLIAMS); DAVID WEST, a/k/a "Michael Rollerson" (hereafter DAVID WEST) all worked as street sellers at this location.

3.   5400 Osage/5400 Addison. CHRISTOPHER SMITH, a/k/a "Jughead" (hereafter CHRISTOPHER SMITH) worked at these locations.

4.   54th and Sansom Streets. RODNEY MURRAY, RAABITAH REYNOLDS, and TYREIK GOLDEN worked this corner.

5.   59th and Catharine. KAREEM SANDERS, along with Mark Newman (deceased), ran this location.

(B)   ANTON TYLER ran the corner at 56th and Catharine for JAMES PATTERSON. ANTON TYLER employed TIMOTHY JOHNSON, a/k/a "Timmy" (hereafter TIMOTHY JOHNSON); FREDERICK LEACH, a/k/a "FL," a/k/a "Little Fred," (hereafter FREDERICK LEACH); AMEEN LEE and EDGAR LAWRENCE as street workers.

13

(C)   **JAMES HILL** sold **JAMES PATTERSON'S** cocaine base ("crack") at 53rd and Market Streets.

(D)   **JOHN DAIR,** a/k/a "John Boyd," a/k/a "John Boy," a/k/a "JB," worked as a courier and cocaine delivery person for **JAMES PATTERSON.**

(E)   **TRACEY TEAGLE** worked as a driver for **JAMES PATTERSON,** transporting **JAMES PATTERSON** to various locations to drop off cocaine and cocaine base ("crack") and pick up proceeds of the sale of cocaine and/or cocaine base ("crack").

4.   **JAMAL MORRIS** worked directly for **COURTNEY CARTER** and controlled street corner sales at 61st and Arch and 50th and Haverford, as well as locations in Camden, New Jersey. **JAMAL MORRIS,** at various times during the period of the conspiracy, employed **M.B. TERRELL, MARIO JEFFERIES, JOHN MINGIA** and **RASOOL LEWIS** to assist in distribution of crack cocaine to these and other locations known and unknown to the grand jury. **M.B. TERRELL, MARIO JEFFERIES** and **RASOOL LEWIS** in turn each had customers and street corner locations of their own. **RASOOL LEWIS** also distributed cocaine and cocaine base ("crack") to customers in Wilmington, Delaware.

5.   At certain times during this conspiracy, **JERMAINE SINGLETON** distributed cocaine obtained from **COURTNEY CARTER** that was sold at various street corner locations including 54th and Race, and 55th and Vine Streets. **JERMAINE SINGLETON** also was responsible for supplying the cocaine base ("crack") distributed at 112 N. Conestoga Street, which he delivered to **JOHN MINGIA,** through an individual known to the grand jury, who employed **JOHN MINGIA,** as the street manager at this location.

6.   At certain times during this conspiracy, **RAKYYM HETHERINGTON**

14

and **OMAR BENNETT** obtained cocaine from **COURTNEY CARTER** and from **JAMES PATTERSON**, which they transported and distributed through their own network of sellers in the area of Greensburg, Pennsylvania. **COURTNEY CARTER** and **JAMES PATTERSON** traveled to the Greensburg, Pennsylvania area to meet with **RAKYYM HETHERINGTON**, **OMAR BENNETT** and others, during the conspiracy.

7.  **CHRISTOPHER SMITH, ALAN CAIN,** and others known and unknown to the grand jury, were employed as "enforcers" for the organization.

8.  **VELMA PATTERSON** and **STEPHANIE HAMMOND** established storage and cooking locations at their residences at 215 S. 58th Street and 814 Pleasant Road (**VELMA PATTERSON**) and 1117 E. Rittenhouse Street (**STEPHANIE HAMMOND**). Both women stored **JAMES PATTERSON's** drug proceeds in their homes for him as well. **VELMA PATTERSON** also rented at least two safe deposit boxes which **JAMES PATTERSON** used to hide drug proceeds. **VELMA PATTERSON** also rented an apartment in her name at the Park Lane East Apartments, Upper Darby, PA, (250 Beverly Drive, Apartment A-18) *a-22* for **JAMES PATTERSON** to use as a cooking and storage location for his cocaine.

9.  **COURTNEY CARTER, JAMES PATTERSON, JAMAL MORRIS, JERMAINE SINGLETON, VELMA PATTERSON, RAKKYM HETHERINGTON, OMAR BENNETT, ZACHARY SPENCE, CHRISTOPHER WILLIAMS, KENNETH WILLIAMS** and **M.B. TERRELL** disguised the true ownership and source of funds for the purchase or rental of real estate and the acquisition of automobiles by using "straws," that is, names of other individuals, to conceal the true ownership of the assets.

10.  **COURTNEY CARTER, JAMES PATTERSON, JAMAL MORRIS,**

15

JERMAINE SINGLETON, RAKKYM HETHERINGTON, ZACHARY SPENCE, CHRISTOPHER WILLIAMS, and MARIO JEFFERIES, among others, used rental cars to transport cocaine and to travel to meet with other co-conspirators and drug customers to further conceal their activities.

11.   COURTNEY CARTER, JAMES PATTERSON, JAMAL MORRIS, JERMAINE SINGLETON, RAKKYM HETHERINGTON, OMAR BENNETT, ZACHARY SPENCE, CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH, JAMES HILL, KENNETH WILLIAMS, ANTON TYLER, M.B. TERRELL, MARIO JEFFERIES, RASOOL LEWIS, VELMA PATTERSON, STEPHANIE HAMMOND, JOHN DAIR, TRACY TEAGLE, JOHN MINGIA, ALAN CAIN, ABDUL HOWARD, ROBERT HOLMES, NATHANIEL MONTGOMERY, RENARD BROWN, RODNEY MURRAY, RAABITAH REYNOLDS, TYREIK GOLDEN, KAREEM SANDERS, AMEEN LEE, FREDERICK LEACH, TIMOTHY JOHNSON, and EDGAR LAWRENCE used cellular telephones, two-way pagers, and digital pagers to communicate with one another to facilitate the activities of the drug organization.

12.   COURTNEY CARTER, JAMES PATTERSON, JAMAL MORRIS, CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH, JAMES HILL, KENNETH WILLIAMS, MARIO JEFFERIES, RASOOL LEWIS, VELMA PATTERSON, STEPHANIE HAMMOND, JOHN DAIR, TRACY TEAGLE, ALAN CAIN, ABDUL HOWARD, RODNEY MURRAY, ROBERT HOLMES, NATHANIEL MONTGOMERY, RENARD BROWN, KAREEM SANDERS, AMEEN LEE, FREDERICK LEACH, TIMOTHY JOHNSON, EDGAR LAWRENCE, BRAHEEM JACKSON, MARCUS

**WILLIAMS** and **DAVID WEST** carried firearms or had firearms available to them, many of which had the serial numbers obliterated, to protect the cocaine and cocaine base ("crack") and the proceeds earned from the sale of cocaine and cocaine base ("crack").

13.   **COURTNEY CARTER, JAMES PATTERSON, JAMAL MORRIS, M.B. TERRELL, ALAN CAIN,** and others known and unknown to the grand jury obtained identification cards such as Pennsylvania Driver's Licenses and Non-Driver's license identification cards with false information on them to further conceal their activities and their true addresses.

17

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, the following overt acts, among others, were performed by the defendants in the Eastern District of Pennsylvania and elsewhere:

1.    On or about July 2, 1997, **JAMES PATTERSON** possessed approximately 12.68 grams of cocaine base ("crack"), and a Smith and Wesson Model 469 pistol with an obliterated serial number, loaded with ten live rounds, in Philadelphia, Pennsylvania.

2.    On or about September 7, 1997, **ALAN CAIN** possessed approximately 10 grams of cocaine base ("crack"), and a .9mm semi-automatic pistol with an obliterated serial number, fully loaded, in Philadelphia, Pennsylvania.

3.    On or about December 20, 1997, **ABDUL HOWARD** possessed approximately 35.3 grams of cocaine base ("crack") and an Astra, Model-75, .45 caliber pistol, serial number 15704, loaded with seven live rounds, in Philadelphia, Pennsylvania.

4.    On or about December 31, 1997, **OMAR BENNETT** paid drug proceeds to **COURTNEY CARTER** in an amount of $2,000.

5.    On or about January 1, 1998, **JAMAL MORRIS** and **RASOOL LEWIS** possessed a Taurus Model PT-92 C, 9mm semi-automatic pistol with an obliterated serial number, loaded with seven live rounds, and drug paraphernalia including packaging materials, in Philadelphia, Pennsylvania.

6.    On or about June 1, 1998, **JAMAL MORRIS** possessed a Lexus LX450, which had been leased by J & B Motors, Inc. to a third party, in Philadelphia, Pennsylvania. The insurance on the vehicle was held in the name of **OMAR BENNETT**.

18

Case 2:02-cr-00172-PBT   Document 181   Filed 10/24/02   Page 19 of 176

7.   On or about June 2, 1998, **M.B. TERRELL** went to the Darby Borough Police Department in the Eastern District of Pennsylvania with a forged document seeking the release of the Lexus LX450 seized from **JAMAL MORRIS** on June 1, 1998.

8.   On or about July 1, 1998, **CHRISTOPHER WILLIAMS** and **RODNEY MURRAY** distributed approximately 24.28 grams of cocaine base ("crack") on the 5300 block of Irving Street, in Philadelphia, Pennsylvania.

9.   On or about July 12, 1998, **RODNEY MURRAY** possessed less than 2 grams of cocaine base ("crack") on the 5400 block of Sansom Street, in Philadelphia, Pennsylvania.

10.   On or about August 25, 1998 at approximately 1:34 p.m., **RODNEY MURRAY** used the telephone to facilitate the sale of one ounce of cocaine base ("crack") to take place later that day. **RODNEY MURRAY** instructed the buyer to meet him at his house at "5437," on Regent Street, in Philadelphia, Pennsylvania.

11.   On or about August 25, 1998, **RODNEY MURRAY** distributed approximately 23.61 grams of cocaine base ("crack") on the 5400 block of Regent Street, in Philadelphia, Pennsylvania.

12.   On or about September 7, 1998, **JAMES PATTERSON**, in the company of **CHRISTOPHER WILLIAMS**, possessed $6,030 in drug proceeds, in Philadelphia, Pennsylvania.

13.   On or about September 8, 1998 at approximately 1:53 p.m., **JAMES PATTERSON** used the telephone to facilitate the sale of one ounce of cocaine base ("crack").

14.   On or about September 17, 1998 at approximately 8:05 p.m., **JAMES**

19

PATTERSON used the telephone to facilitate the sale of one ounce of cocaine base ("crack") to take place the following day. **JAMES PATTERSON** responded to the buyer's inquiry "what it look like tomorrow?" by responding, "yeah, everything, everything," indicating he was ready to deliver the one ounce of cocaine.

15.    On or about September 18, 1998 at approximately 11:56 a.m., **JAMES PATTERSON** used the telephone to facilitate the sale of one ounce of cocaine base ("crack") to take place later that day. **JAMES PATTERSON** and the buyer agree to meet at 1:00 at 58th and Baltimore Avenue.

16.    On or about September 18, 1998, **JAMES PATTERSON** distributed approximately 22.84 grams of cocaine base ("crack") to a cooperating individual, in Philadelphia, Pennsylvania.

17.    On or about September 18, 1998 at approximately 8:25 p.m., **JAMES PATTERSON** used the telephone to discuss the price for the sale of one ounce of cocaine base ("crack") which had occurred earlier that day, and to discuss a future sale.

18.    On or about September 30, 1998, **RAKYYM HETHERINGTON** was in possession of $18,200 in drug proceeds in Frederick, Maryland which was to be paid to **COURTNEY CARTER** for cocaine in Philadelphia, Pennsylvania.

19.    On or about October 4, 1998 at approximately 6:30 p.m., **JAMES PATTERSON** used the telephone to facilitate the sale of two ounces of cocaine base ("crack") to take place the following day. **JAMES PATTERSON** agrees to give the buyer "a better number" because the buyer advises he is buying more than last time.

20.    On or about October 5, 1998 at approximately 12:10 p.m., **JAMES**

PATTERSON used the telephone to facilitate the sale of two ounces of cocaine base ("crack") to take place later that day. **JAMES PATTERSON** and the buyer agree to meet at approximately 1:00 at 58th and Baltimore Avenue.

21.     On or about October 5, 1998, **JAMES PATTERSON** and **JOHN DAIR** distributed approximately 52.79 grams of cocaine base ("crack") to a cooperating individual, in Philadelphia, Pennsylvania.

22.     On or about February 22, 1999, **TRACEY TEAGLE** possessed approximately 7 grams of cocaine base ("crack"), in Philadelphia, Pennsylvania.

23.     On or about March 9, 1999, **COURTNEY CARTER** traveled to the area of Greensburg, Pennsylvania, to meet with **RAKYYM HETHERINGTON** and others regarding the distribution of **COURTNEY CARTER's** cocaine.

24.     On or about March 17, 1999, **COURTNEY CARTER** traveled to the area of Greensburg, Pennsylvania, to meet with **RAKYYM HETHERINGTON** and others regarding the distribution of **COURTNEY CARTER's** cocaine.

25.     On or about July 23, 1999, **KAREEM SANDERS** possessed approximately 4.51 grams of cocaine base ("crack") in Philadelphia, Pennsylvania.

26.     On or about September 3, 1999 **RAKYYM HETHERINGTON** paid $1,317 in drug proceeds to J & B Motors, Inc. for **COURTNEY CARTER's** lease payment on a 2000 Mercedes SL500.

27.     On or about October 4, 1999, **ROBERT HOLMES** distributed approximately 19 milligrams of cocaine base ("crack"), and was in possession of $526 in drug proceeds, in Philadelphia, Pennsylvania.

28.     On or about October 8, 1999, **OMAR BENNETT** paid $1,317 in drug proceeds to J & B Motors, Inc. for **COURTNEY CARTER's** lease payment on a 2000 Mercedes SL500.

29.     On or about December 29, 1999, **KAREEM SANDERS** aided and abetted the distribution of less than 1 gram of cocaine base ("crack") to a cooperating individual, in Philadelphia, Pennsylvania.

## THE ITHAN AND LOCUST SHOOTING INCIDENTS

30.     In the latter part of 1999 into 2000, members of the CCO operating primarily in the area of Ithan and Locust, including but not limited to **CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH, ALAN CAIN, ROBERT HOLMES, ABDUL HOWARD, NATHANIEL MONTGOMERY, RENARD BROWN** and others known and unknown to the grand jury, [who collectively referred to themselves as "I-Block"] became involved in a rivalry with a group known as "Zip World" or "Zipnicks," who sold cocaine base ("crack"), some of which was also obtained from **JAMES PATTERSON**, in and around the area of 58th and Willows. After several incidents in which the two groups exchanged words, the following incidents involving exchanges of gunfire occurred:

A.     **THE FATIMA'S LOUNGE SHOOTING**

31.     On or about the early morning hours of January 1, 2000, inside Fatima's Lounge, at 40th and Poplar Streets, **ABDUL HOWARD, ROBERT HOLMES, ALAN CAIN,** and others known and unknown to the grand jury, encountered members of the "Zip World." Leaving the bar first, **ABDUL HOWARD, ROBERT HOLMES** and **ALAN CAIN** proceeded to **ABDUL HOWARD's** vehicle, where **ABDUL HOWARD** removed firearms from the trunk

of the vehicle. Shortly thereafter, members of "Zip World" left the bar, went to their cars, at which time **ROBERT HOLMES** and **ALAN CAIN** fired at the vehicles.

**B.     THE SHOOTING AT ITHAN AND LOCUST**

32.     On or about the evening of January 2, 2000, **NATHANIEL MONTGOMERY, RENARD BROWN** and others known and unknown to the grand jury were on the corner of Ithan and Locust Streets engaged in the selling of cocaine base ("crack") obtained from **JAMES PATTERSON** and **CHRISTOPHER WILLIAMS**. A dark-colored van pulled up to the corner, and the passenger, described as a dark-skinned black male with a beard, got out of the van and began firing at the individuals on the corner. **NATHANIEL MONTGOMERY** turned and ran, but was struck in the side, collapsing on the 200 block of Frazier Street. **NATHANIEL MONTGOMERY** recovered from his injuries after several weeks at the Hospital of the University of Pennsylvania, where he underwent surgery.

33.     Shell casings left at the scene by the shooters included eight .9mm casings and six .40 caliber casings.

**C.     THE HOMICIDE AT 58TH AND WILLOWS**

34.     Subsequent to the shooting of **NATHANIEL MONTGOMERY** on the evening of January 2, 2000, **CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH, ALAN CAIN, ROBERT HOLMES, MARIO JEFFERIES, RENARD BROWN** and other individuals known and unknown to the grand jury met at the residence used by a now deceased co-conspirator, Michael Hawkins, a/k/a "Mike Scully," to discuss retaliation for the shooting of **NATHANIEL MONTGOMERY**. A plan involving a minimum of two vehicles, to arrive at 58th and Willows from different directions, was devised during the meeting. Each car was to

contain multiple, armed members of the conspiracy.

35.    Sometime after midnight, on January 3, 2000, **CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH,** and a third individual known to the grand jury, traveled to 58th and Willows from the direction of Cobbs Creek Parkway.  A second vehicle containing **ALAN CAIN, ROBERT HOLMES** and another individual known to the grand jury, was held up and did not arrive at the intersection of 58th and Willows prior to the shooting.

36.    Upon arriving near the intersection of 58th and Willows, **CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH,** and a third individual known to the grand jury exited their vehicle and approached the corner on foot, where they encountered Grayling Craig, who was selling cocaine base ("crack") on the corner of 58th and Willows.  The three individuals were armed with two .9mm handguns and a .40 caliber Smith and Wesson.  All three individuals opened fire on Grayling Craig.

37.    Craig ran across 58th Street toward a school yard while the three individuals continued firing.  Craig fell on the sidewalk across 58th Street, where **CHRISTOPHER WILLIAMS, CHRISTOPHER SMITH** and the third individual stood over him, continuing to fire.  Craig suffered wounds to the left calf, the right buttock, two shots to the right bicep, the right ribcage, the left thigh, the right front bicep at the elbow, the right forearm, the right wrist, two wounds to the left chest, and one to the forehead.  Craig was pronounced dead at the Hospital of the University of Pennsylvania.  A total of approximately 26 shell casings were recovered from the scene, and a total of approximately 6 bullet specimens were recovered from the scene or from the body of Grayling Craig.

38.    After the shooting, **CHRISTOPHER WILLIAMS, CHRISTOPHER**

24

**SMITH,** and others known and unknown to the grand jury met together, where **CHRISTOPHER WILLIAMS** advised the others that they had shot a drug seller at 58th and Willows. **CHRISTOPHER WILLIAMS** did not know the name of the victim.

### D.   CLUB 3801 RETALIATORY SHOOTING

39.   On or about February 25, 2000, **JAMAL MORRIS** sponsored a party for a local rap artist at Club 3801, located on an upper floor of the building at 38th and Market Street, within the campus of the University of Pennsylvania. A public parking lot, surrounded by a chain link fence, is located directly across Market Street from the building.

40.   Sometime after midnight, in the early morning hours of February 26, 2000, **CHRISTOPHER WILLIAMS, ALAN CAIN, CHRISTOPHER SMITH** and an individual known to the grand jury entered the parking lot in **CHRISTOPHER WILLIAMS'** 1998 Chevrolet Blazer. **CHRISTOPHER WILLIAMS** was driving and **ALAN CAIN** was the front seat passenger. As they drove through the parking lot, at least four black males approached the Blazer and opened fire. **ALAN CAIN** attempted to return fire from the front passenger seat, but was struck in the left jaw by a bullet entering the vehicle through the front windshield before firing his own weapon. **CHRISTOPHER SMITH,** armed with his own weapon and that of **CHRISTOPHER WILLIAMS,** returned fire from the back seat with both firearms.

41.   After the exchange of gunfire, the four gunmen outside the vehicle fled, and **CHRISTOPHER WILLIAMS** and **CHRISTOPHER SMITH** went inside the building at 3801 Market Street, while **ALAN CAIN** was transported to the Hospital of the University of Pennsylvania. **ALAN CAIN** told treating medical personnel that he had been shot through the open passenger window while he sat in the driver's side of his own vehicle.

25

42.     Firearms used by **CHRISTOPHER SMITH** and possessed by **ALAN CAIN** were left at the scene.  A bystander in the area of 39th and Market Streets was shot in the leg by a stray bullet during the incident, and damage caused by the gunfire was documented on several residential properties on the unit block of 39th Street.

\* \* \*

43.     On or about March 2, 2000, **M. B. TERRELL** possessed approximately 25.78 grams of cocaine base ("crack"), a digital scale, packaging materials and $3,057 in U.S. currency, in Philadelphia, Pennsylvania.

44.     On or about April 21, 2000, **TYREIK GOLDEN** distributed approximately .49 grams of cocaine base ("crack") in Philadelphia, Pennsylvania.

45.     On or about June 13, 2000 at approximately 4:40 p.m., **JAMES HILL** used the telephone to facilitate the sale of cocaine base ("crack") to take place later that day.

46.     On or about June 13, 2000, **JAMES HILL** distributed approximately 24.8 grams of cocaine base ("crack") to a cooperating individual, in Philadelphia, Pennsylvania.

47.     On or about July 17, 2000, **JAMAL MORRIS** possessed a Ruger Model P95DC, 9mm semi-automatic pistol with an obliterated serial number, loaded with fourteen live rounds, in Philadelphia, Pennsylvania.

48.     On or about October 5, 2000, **TYREIK GOLDEN** and **RAABITAH REYNOLDS** possessed with the intent to distribute approximately 3.09 grams of cocaine base ("crack"), in Philadelphia, Pennsylvania.

49.     On or about October 7, 2000, **JAMES PATTERSON** possessed approximately $5,760 in drug proceeds, in Philadelphia, Pennsylvania.

26

50.    On or about February 2, 2001, **AMEEN LEE** possessed approximately 4.34 grams of cocaine base ("crack"), near 700 S. 56th Street, Philadelphia, Pennsylvania.

51.    On or about March 12, 2001, **STEPHANIE HAMMOND** possessed approximately 88.42 grams of cocaine base ("crack") which had been manufactured in her residence at 1117 E. Rittenhouse Street, Philadelphia, Pennsylvania.

52.    On or about March 21, 2001 at approximately 4:30 p.m., **MARIO JEFFERIES** used the telephone to discuss a future sale of cocaine, after a shipment he was awaiting arrived.

53.    On or about March 28, 2001, **ANTON TYLER** distributed less than 2 grams of cocaine base ("crack") to a cooperating individual, in Philadelphia, Pennsylvania.

54.    On or about March 29, 2001, **AMEEN LEE** possessed approximately 35.95 grams of cocaine base ("crack"), a Tanfoglio, Armi Guiseppe, .40 caliber semi-automatic pistol, with the serial number obliterated, ammunition, packaging materials, a digital scale and other drug paraphernalia, and identification in the name of **AMEEN LEE**, all at 5541 Catharine Street, Philadelphia, Pennsylvania.

55.    On or about April 3, 2001 at approximately 12:50 p.m., **MARIO JEFFERIES** and **JAMAL MORRIS** used the telephone to discuss a possible sale of cocaine to take place later that day.

56.    On or about April 3, 2001 at approximately 1:15 p.m., **CHRISTOPHER ᐧLIAMS** used the telephone to discuss a delivery of cocaine he was expecting from **JAMES ᐧRSON. CHRISTOPHER WILLIAMS** advised the caller that he was with ᐧH REYNOLDS and **RODNEY MURRAY** at the time of the call.

27

57.    On or about April 16, 2001 at approximately 2:30 p.m., **ZACHARY SPENCE** used the telephone to discuss the current price for cocaine, and advised the price for 4 ½ ounces was $3,500, and advised "it ain't been 28 in 3 years!"

58.    On or about April 17, 2001 at approximately 3:00 p.m., **ZACHARY SPENCE** used the telephone to discuss a potential sale of 4 ½ ounces of cocaine, which he offered to sell for $3,500.

59.    On or about April 18, 2001 at approximately 11:55 a.m., **ZACHARY SPENCE** used the telephone to discuss a potential sale of 4 ½ ounces of cocaine. **ZACHARY SPENCE** advised that he would have to check to see if it was available.

60.    On or about April 18, 2001 at approximately 1:35 p.m., **COURTNEY CARTER** and **ZACHARY SPENCE** used the telephone to discuss a delivery of cocaine, which **COURTNEY CARTER** advised he took back to the seller because he did not like the color. **COURTNEY CARTER** advised the buyer that he told **ZACHARY SPENCE** to advise the buyer that he might have something later that day.

61.    On or about May 1, 2001, **MARIO JEFFERIES** possessed approximately 1144 grams of cocaine, and a Sig Sauer Model P220 .45 caliber semi-automatic pistol, bearing serial number C206625. **MARIO JEFFERIES** obtained the cocaine in New York, and was transporting it back to Philadelphia, Pennsylvania in a rental car, when he was apprehended in Reading, New Jersey at a rest stop on the New Jersey Turnpike.

62.    On or about May 4, 2001 at approximately 5:45 p.m., **COURTNEY R** and **ZACHARY SPENCE** used the telephone to discuss return of the previous of cocaine, and the possibility that another shipment would arrive by the weekend.

28

63.     On or about May 10, 2001 at approximately 5:45 p.m., **COURTNEY CARTER** used the telephone to discuss the price for 4 ½ ounces of cocaine, that **ZACHARY SPENCE** was to provide to the buyer for $3,500.

64.     On or about May 11, 2001 at approximately 12:35 p.m., **ZACHARY SPENCE** used the telephone to set up a delivery of cocaine he was to obtain from **COURTNEY CARTER**.

65.     On or about May 11, 2001 at approximately 2:50 p.m., **COURTNEY CARTER** used the telephone to discuss **ZACHARY SPENCE's** anticipated delivery of 4 ½ ounces of cocaine to the buyer.  On multiple calls, **COURTNEY CARTER** was advised by the buyer that **ZACHARY SPENCE** stated he had to come get the cocaine from **COURTNEY CARTER**.  **ZACHARY SPENCE** then contacted the buyer and agreed to meet at 46th Street, however, **ZACHARY SPENCE** failed to meet the buyer.

66.     On or about May 22, 2001 at approximately 4:00 p.m., **JAMAL MORRIS** used the telephone to discuss selling five ounces of cocaine for $3,200.

67.     On or about May 23, 2001 at approximately 4:00 p.m., **JAMAL MORRIS** used the telephone to finalize the deal for five ounces of cocaine for $3,200.

68.     On or about May 23, 2001 at approximately 4:25 p.m., **JAMAL MORRIS** used the telephone to ask if the money was ready to purchase five ounces of cocaine from **JAMAL MORRIS**.

69.     On or about May 23, 2001, **JAMAL MORRIS** distributed approximately ms of cocaine base ("crack") to a cooperating individual, in Philadelphia, Pennsylvania.

70.     On or about June 4, 2001 at approximately 1:35 p.m., **ZACHARY**

SPENCE used the telephone to advise a buyer that he could arrange a sale of cocaine for the next day.

     71.    On or about June 4, 2001 at approximately 3:35 p.m., **MARIO JEFFERIES** used the telephone to discuss opening a corner to sell cocaine.

## DELIVERY OF COCAINE FROM COURTNEY CARTER

     72.    On or about June 12, 2001 at approximately 12:07 p.m., **COURTNEY CARTER** used the telephone to discuss receiving a shipment of cocaine for which he would pay $300,000, and the supplier would "match" that amount.

     73.    On or about June 14, 2001 at approximately 5:45 p.m., **COURTNEY CARTER** used the telephone to discuss selling nine ounces of cocaine for $6,400.

     74.    On or about June 14, 2001 at approximately 6:50 p.m., **COURTNEY CARTER** used the telephone to arrange the meeting place for the sale of nine ounces of cocaine later that evening.

     75.    On or about June 14, 2001, **COURTNEY CARTER** distributed approximately 249 grams of cocaine to a cooperating individual, in Philadelphia, Pennsylvania. **COURTNEY CARTER** used a rental vehicle to deliver the 249 grams of cocaine.

* * *

## THE KIDNAPING OF PATTERSON'S GIRLFRIEND AND CHILDREN

     76.    On or about July 23, 2001, **JAMES PATTERSON's** girlfriend, a person to the grand jury, and his two of his children, were kidnapped by at least three males the grand jury to be competitors of the CCO. The kidnappers demanded money and a f cocaine as ransom for their safe return. On or about July 23 - 24, 2001, **JAMES**

PATTERSON contacted **COURTNEY CARTER, CHRISTOPHER WILLIAMS, KENNETH WILLIAMS, ANTON TYLER, STEPHANIE HAMMOND, VELMA PATTERSON** and others unknown to the grand jury to advise them of the kidnapping.

77.     On or about July 24, 2001, **JAMES PATTERSON** met with **CHRISTOPHER WILLIAMS, KENNETH WILLIAMS, ANTON TYLER** and **VELMA PATTERSON** at **VELMA PATTERSON's** residence at 814 Pleasant Road, Yeadon, Pennsylvania. **JAMES PATTERSON** made telephone contact with **COURTNEY CARTER** during the early morning hours of June 24, 2001.

78.     On or about July 24, 2001, prior to 10:00 a.m., **JAMES PATTERSON, CHRISTOPHER WILLIAMS, KENNETH WILLIAMS,** and **ANTON TYLER** traveled to Southwest Philadelphia in **JAMES PATTERSON's** Ford Expedition, to look for the kidnappers.

79.     On or about July 24, 2001, prior to 10:00 a.m., **COURTNEY CARTER** and an individual known to the grand jury traveled to Southwest Philadelphia in **COURTNEY CARTER's** Mercedes Benz CLK, to look for the kidnappers.

80.     On or about July 24, 2001, at approximately 10:00 a.m., **JAMES PATTERSON, CHRISTOPHER WILLIAMS, KENNETH WILLIAMS, ANTON TYLER, COURTNEY CARTER** and an individual unknown to the grand jury, located one of the ...dnappers at the Penrose Plaza Shopping Center, on the corner of Island Avenue and Lindbergh ...levard in Southwest Philadelphia. **JAMES PATTERSON, CHRISTOPHER WILLIAMS,** ...ETH WILLIAMS, and **COURTNEY CARTER** shot at the kidnapper, wounding him. ...apper returned fire and ran inside a store in the mall. Both vehicles left the area.

81.     On or about July 24, 2001, shortly after the shooting incident, **JAMES**

31

PATTERSON and COURTNEY CARTER took their vehicles, the Ford Expedition and the Mercedes Benz, respectively, to an auto body shop in Southwest Philadelphia to have the windshields of both vehicles replaced and visible damage to the body of COURTNEY CARTER's Mercedes Benz CLK repaired, and the vehicles cleaned, to destroy evidence of their involvement in the shooting.

82.    On or about August 2, 2001, at approximately 12:30 p.m., COURTNEY CARTER used the telephone to discuss the shooting of the kidnapper, and to discuss the price at which he would sell 4 ½ ounces of cocaine.

* * *

83.    On or about August 17, 2001 at approximately 11:50 a.m., COURTNEY CARTER used the telephone to discuss a cocaine source of supply in Florida.

84.    On or about October 3, 2001 at approximately 1:25 p.m., JAMES HILL used the telephone to discuss the cocaine available from JAMES PATTERSON, COURTNEY CARTER and JAMAL MORRIS.

85.    On or about October 3, 2001 at approximately 3:10 p.m., COURTNEY CARTER used the telephone to discuss the rising price of cocaine, and offered a price of $3,500 for 4 ½ ounces, but stated that everyone else must pay $3,850 for 4 ½ ounces.

86.    On or about December 6, 2001 at approximately 1:40 p.m., COURTNEY CARTER used the telephone to discuss good quality cocaine he had just obtained.

87.    On or about December 27, 2001, NATHANIEL MONTGOMERY and RENARD BROWN were in possession of a Taurus 9mm semi-automatic pistol, serial number T0G07290, loaded with 14 live rounds.

## THE BROOKLYN AND WALLACE STREET ACTIVITY

88.     On or about February 26, 1999, **MALIK WILLIAMS** distributed two

vials of cocaine base ("crack"), weighing approximately 56 and 63 milligrams, in the area of 42nd

Street and Fairmount Avenue in Philadelphia, Pennsylvania.

89.     On or about December 8, 2001, **BRAHEEM JACKSON, MARCUS**

**WILLIAMS** and **DAVID WEST** possessed with the intent to distribute approximately 145

grams of cocaine base ("crack") and approximately 20.7 grams of cocaine supplied by **JAMES**

**PATTERSON** through **MALIK WILLIAMS.  BRAHEEM JACKSON, MARCUS**

**WILLIAMS** and **DAVID WEST** were also in possession of approximately $4,700 in United

States currency, plates, a grinder and two digital scales, all containing cocaine residue, 60 grams

of polyhydric alcohol (cut) with trace amounts of cocaine, stored in a black and white bottle

marked "mannitol," cellular telephones, two hand-held radios, packaging materials, and the

following firearms: (1) one Glock Model 36, .45 caliber semi-automatic pistol, with an

obliterated serial number, loaded with five live rounds; (2) one Taurus International Model R462,

.38 caliber revolver, serial number RI79367, loaded with five live rounds; (3) one Smith &

Wesson 357 Magnum revolver, Model 686, serial number CBB7503, loaded with two live

rounds; (4) one Smith & Wesson Model US Army 1917, .45 caliber semi-automatic pistol, serial

number 42860 loaded with five live rounds; (5) one Harrington and Richardson Model 999

Sportsman, .22 caliber revolver, serial number AN 62424 loaded with seven live rounds.

90.     On or about December 18, 2001, **BRAHEEM JACKSON** possessed with

the intent to distribute approximately 3.27 grams of cocaine base ("crack") packaged in a plastic

baggie containing 40 purple-tinted ziplock packets.

91.     On or about February 19, 2002, **BRAHEEM JACKSON** and two other individuals known to the grand jury possessed with the intent to distribute approximately 3.38 grams of cocaine base ("crack") packaged in a clear plastic bag containing 42 pink-tinted ziplock bags and a second clear plastic bag containing 8 pink-tinted ziplock bags.

\* \* \*

92.     On or about January 15, 2002, **ALAN CAIN** was in possession of a Smith and Wesson .45 caliber pistol with an obliterated serial number, loaded with eight live rounds and one in the chamber, and was wearing a bullet proof vest.

93.     On or about January 24, 2002, **RENARD BROWN** possessed with the intent to distribute approximately 2.19 grams of cocaine base ("crack") in Philadelphia, Pennsylvania.

94.     On or about January 28, 2002, **CHRISTOPHER WILLIAMS** evaded police in a high-speed chase, and barricaded himself into the residence at 5861 Walton Street, abandoning a firearm in his vehicle.

### THE 56TH AND CATHARINE ACTIVITY

95.     On or about January 31, 2002, **TIMOTHY JOHNSON** distributed less than 1 gram of cocaine base ("crack") to a cooperating individual in Philadelphia, Pennsylvania.

96.     On or about February 5, 2002, **FREDERICK LEACH** distributed less than 2 grams of cocaine base ("crack") to a cooperating individual in Philadelphia, Pennsylvania.

97.     On or about February 6, 2002, **FREDERICK LEACH** distributed less than 2 grams of cocaine base ("crack") to a cooperating individual in Philadelphia, Pennsylvania.

98.     On or about February 11, 2002, **NATHANIEL MONTGOMERY** and

34

**RENARD BROWN** were in possession of $1,197 and $727 in drug proceeds, respectively, in Philadelphia, Pennsylvania.

99.    On or about February 11, 2002, **COURTNEY CARTER** used the telephone to discuss an order for one-half kilogram of cocaine.

100.    On or about February 12, 2002, **FREDERICK LEACH** distributed less than 2 grams of cocaine base ("crack") to a cooperating individual in Philadelphia, Pennsylvania.

101.    On or about February 23, 2002, **ANTON TYLER** and **TIMOTHY JOHNSON** distributed less than 2 grams of cocaine base ("crack") to a cooperating individual in Philadelphia, Pennsylvania.

102.    On or about February 26, 2002, **FREDERICK LEACH** possessed approximately 13 blue tinted ziplock packets containing less than two grams total weight of cocaine base ("crack"), approximately $2,800 in United States currency, and identification in the name of **FREDERICK LEACH** at 5552 Catharine Street.

103.    On or about February 26, 2002, **ANTON TYLER** possessed with the intent to distribute approximately 14 grams of cocaine base ("crack") at 5550 Catharine Street, Philadelphia, Pennsylvania.

### THE 55TH AND RACE ACTIVITY

104.    On or about February 5, 2002, **COURTNEY CARTER** traveled to 5660 Cherry Street, and met briefly with **JERMAINE SINGLETON** and an individual known to the grand jury. **JERMAINE SINGLETON** had a brief conversation with **COURTNEY CARTER** before spotting law enforcement surveillance vehicles and driving off.

105.    On or about February 14, 2002, **JOHN MINGIA** supplied cocaine base

35

("crack") to sellers at 112 N. Conestoga Street, who sold seven vials of cocaine base ("crack") containing approximately 2 grams, to a cooperating individual.

106.   On or about February 18, 2002, **JERMAINE SINGLETON** met with an individual known to the grand jury, and supplied him with cocaine. Later that day, this same individual delivered cocaine base ("crack") to **JOHN MINGIA**. **JOHN MINGIA** delivered a portion of the cocaine base ("crack") to 112 N. Conestoga Street for distribution.

107.   On or about February 20, 2002, **JOHN MINGIA** received cocaine base ("crack") from the same individual known to the grand jury, which he delivered to 112 N. Conestoga for distribution. Individuals inside 112 N. Conestoga sold seven vials of cocaine base ("crack") containing approximately 2 grams, to an undercover police officer.

108.   On or about February 22, 2002, **COURTNEY CARTER** met with **JERMAINE SINGLETON** inside the Top Taste Jamaican Restaurant on 52nd Street near Filbert Street. After meeting inside the restaurant, both males went to their vehicles. **COURTNEY CARTER** removed a large plastic clothing bag from the trunk of a white Nissan Altima and gave the bag to **JERMAINE SINGLETON**. **JERMAINE SINGLETON** put the bag in the trunk of his vehicle, a white Oldsmobile.

## THE SEARCHES

109.   On or about February 26, 2002, **COURTNEY CARTER** possessed a stolen Glock Model 19, 9mm semi-automatic pistol, serial number BW207, loaded with 13 live rounds. **CARTER** possessed a 30 round assault clip which fit the same firearm. **CARTER** possessed approximately $18,020 in drug proceeds, several pieces of men's diamond jewelry purchased with drug proceeds, a BMW X-5 purchased with drug proceeds, a scale, measuring cup

and plastic bag containing cocaine residue, four photo identification cards bearing false information about **CARTER**, two pagers and several cellular telephones.

110.    On or about February 26, 2002, **JAMES PATTERSON** possessed approximately $6,500 in drug proceeds, several cellular telephones, and a pager.

111.    On or about February 26, 2002, **VELMA PATTERSON** possessed approximately 14 grams of cocaine, approximately $131,000 in drug proceeds, a Glock Model 36, .45 caliber semi-automatic pistol, serial number DWN502, loaded with 6 live rounds, and 6 additional rounds of .45 caliber ammunition, several cellular telephones and pagers, all at 814 Pleasant Road, Yeadon, Pennsylvania.

112.    On or about February 26, 2002, **JAMES PATTERSON** and **VELMA PATTERSON** possessed approximately $131,000 in drug proceeds in safe deposit box number LB 3057 at Bryn Mawr Bank and Trust Co., 801 Lancaster Avenue, Bryn Mawr, PA, and approximately $50,000 in drug proceeds in safe deposit box number D-93 at First Union Bank, Center Square Branch, 15th and Market Streets, Philadelphia, Pennsylvania.

113.    On or about February 26, 2002, **JAMAL MORRIS** possessed two (2) kilograms (approximately 2000 grams) of cocaine in "brick" form, a Glock Model 32 .357 semi-automatic pistol, serial number CP0762 loaded with 8 live rounds of ammunition, approximately $7,450 in drug proceeds, a cellular telephone and paperwork in the name of "Dawan Morris," all at 7600 Stenton Avenue, Apartment 16-E, Philadelphia, Pennsylvania.

114.    On or about February 26, 2002, **JERMAINE SINGLETON** possessed approximately $3,000 in drug proceeds, tally sheets, a digital scale containing cocaine residue, cutting instruments containing cocaine residue and packaging materials for cocaine.

37

All in violation of Title 21, United States Code, Section 846.

## COUNT 2

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 2, 1997, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is

approximately 12.68 grams of a mixture or substance containing a detectable amount of cocaine

base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

39

## COUNT 3

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 19, 1997, in the Eastern District of Pennsylvania, defendant

**ABDUL HOWARD,**
**a/k/a "RODNEY BELL,"**
**a/k/a "SALEEM RACKMAN,"**
**a/k/a "ABDUL TALLEY,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is

approximately 35.3 grams of a mixture or substance containing a detectable amount of cocaine

base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

40

## COUNT 4

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 19, 1997, in the Eastern District of Pennsylvania,

defendant

**ABDUL HOWARD,**
**a/k/a "RODNEY BELL,"**
**a/k/a "SALEEM RACKMAN,"**
**a/k/a "ABDUL TALLEY,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 35.3 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising Andrew Hamilton

Elementary School, located at 5640 Spruce Street, Philadelphia, Pennsylvania, in violation of

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

In violation of Title 21, United States Code, Section 860(a).

41

## COUNT 5

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 19, 1997, in the Eastern District of Pennsylvania, defendant

**ABDUL HOWARD,**
**a/k/a "RODNEY BELL,"**
**a/k/a "SALEEM RACKMAN,"**
**a/k/a "ABDUL TALLEY,"**

did knowingly and intentionally employ, hire, use, persuade, induce, entice and coerce a person

under the age of 18 years of age to distribute a mixture or substance containing a detectable

amount of cocaine base ("crack"), a Schedule II controlled substance, within of the real property

comprising Andrew Hamilton Elementary School, located at 5640 Spruce Street, Philadelphia,

Pennsylvania, in violation of Title 21, United States Code, Section 860(a).

In violation of Title 21, United States Code, Section 860(c).

42

## COUNT 6

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 1, 1998, in the Eastern District of Pennsylvania, defendant

**RODNEY MURRAY,**
**a/k/a "RONALD MILLER,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 24.28 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

43

## COUNT 7

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 1, 1998, in the Eastern District of Pennsylvania, defendant

**RODNEY MURRAY,**
**a/k/a "RONALD MILLER,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 24.28 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising Samuel B. Huey School,

located at 5200 Pine Street, Philadelphia, Pennsylvania, in violation of Title 21, United States

Code, Sections 841(a)(1) and 841(b)(1)(B).

In violation of Title 21, United States Code, Section 860(a).

44

## COUNT 8

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 1, 1998, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally employ, hire, use, persuade, induce, entice or coerce a person

under the age of 18 years of age, that is, **CHRISTOPHER WILLIAMS**, to distribute a mixture

or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled

substance, within 1,000 feet of the real property comprising Samuel B. Huey School, located at

5200 Pine Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code,

Section 860(a).

In violation of Title 21, United States Code, Sections 860(c).

## COUNT 9

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 25, 1998, in the Eastern District of Pennsylvania, defendant

**RODNEY MURRAY,**
**a/k/a "RONALD MILLER,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 23.61 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

46

## COUNT 10

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 25, 1998, in the Eastern District of Pennsylvania, defendant

**RODNEY MURRAY,
a/k/a "RONALD MILLER,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 23.61 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising E. L. Mitchell Elementary

School, located at 5500 Kingsessing Avenue, Philadelphia, Pennsylvania, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(B).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 11

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 18, 1998, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,
a/k/a "GIOVANNI,"
a/k/a "GIO,"
a/k/a "GIOVANNI LOVE,"
a/k/a "GL,**

did knowingly and intentionally distribute more than 5 grams, that is approximately 22.84 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT 12

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 18, 1998, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 22.84 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising William F. Harrity Elementary School, located at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 13

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 5, 1998, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL," and**
**JOHN DAIR,**
**a/k/a "JOHN BOY,"**
**a/k/a "JB,"**

did knowingly and intentionally distribute more than 50 grams, that is approximately 52.79 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## COUNT 14

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 5, 1998, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL," and**
**JOHN DAIR,**
**a/k/a "JOHN BOY,"**
**a/k/a "JOHN BOYD,"**
**a/k/a "JB,"**

did knowingly and intentionally distribute more than 50 grams, that is approximately 52.79 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising William F. Harrity

Elementary School, located at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 15

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 23, 1999, in the Eastern District of Pennsylvania, defendant

**KAREEM SANDERS,**
**a/k/a "REEM,"**

did knowingly and intentionally possessed with the intent to distribute approximately 4.51 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 16

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 23, 1999, in the Eastern District of Pennsylvania, defendant

**KAREEM SANDERS,**
**a/k/a "REEM,"**

did knowingly and intentionally possess with the intent to distribute approximately 4.51 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising William Cullen Bryant Elementary School, located at 6001 Cedar Avenue, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 17

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 2, 2000, in the Eastern District of Pennsylvania, defendant

**M.B. TERRELL,**
**a/k/a "MARK TERRELL,"**
**a/k/a "MARC TERRELL,"**
**a/k/a "MARK MILLER,"**
**a/k/a "KEVIN MILLER,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is

approximately 25.78 grams of a mixture or substance containing a detectable amount of cocaine

base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

54

## COUNT 18

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 21, 2000, in the Eastern District of Pennsylvania, defendant

**TYREIK GOLDEN,**

did knowingly and intentionally distribute approximately .49 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

55

## COUNT 19

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 13, 2000, in the Eastern District of Pennsylvania, defendant

**JAMES HILL,**
**a/k/a "JAMES HALL,"**
**a/k/a "JAMES THOMPSON,"**

did knowingly and intentionally distribute more than 5 grams, that is approximately 24.8 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

56

## COUNT 20

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 5, 2000, in the Eastern District of Pennsylvania, defendant

**RAABITAH REYNOLDS,**
**a/k/a "RAABITAH GRAY,"**
**a/k/a "ROBERT REYNOLDS,"**
**a/k/a "ROBERT JOHNSON,"**

did knowingly and intentionally distribute approximately 3.09 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 21

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 2, 2001, in the Eastern District of Pennsylvania, defendant

**AMEEN LEE,**
**a/k/a "MEENIE,"**

did knowingly and intentionally possess with the intent to distribute approximately 4.34 grams of

a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 22

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 2, 2001, in the Eastern District of Pennsylvania, defendant

**AMEEN LEE,
a/k/a "MEENIE,"**

did knowingly and intentionally possess with the intent to distribute approximately 4.34 grams of

a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising William F. Harrity

Elementary School, located at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 23

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 12, 2001, in the Eastern District of Pennsylvania, defendant

**STEPHANIE HAMMOND,**

did knowingly and intentionally possess with the intent to distribute more than 50 grams, that is,

approximately 88 grams of a mixture or substance containing a detectable amount of cocaine base

("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## COUNT 24

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 12, 2001, in the Eastern District of Pennsylvania, defendant

**STEPHANIE HAMMOND,**

did knowingly and intentionally possess with the intent to distribute more than 50 grams, that is, approximately 88 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising Martin Luther King High School, located at 6100 Stenton Avenue, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 25

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 28, 2001, in the Eastern District of Pennsylvania, defendant

**ANTON TYLER,
a/k/a "ANT,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 26

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 28, 2001, in the Eastern District of Pennsylvania, defendant

**ANTON TYLER,**
**a/k/a "ANT,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance,

within 1,000 feet of the real property comprising William F. Harrity Elementary School, located

at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code,

Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 27

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 29, 2001, in the Eastern District of Pennsylvania, defendant

**AMEEN LEE,**
**a/k/a "MEENIE,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is

approximately 35.95 grams of a mixture or substance containing a detectable amount of cocaine

base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

64

## COUNT 28

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 29, 2001, in the Eastern District of Pennsylvania, defendant

**AMEEN LEE,**
**a/k/a "MEENIE,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is

approximately 35.95 grams of a mixture or substance containing a detectable amount of cocaine

base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property

comprising William F. Harrity Elementary School, located at 5601 Christian Street, Philadelphia,

Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 29

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 1, 2001, in the Eastern District of Pennsylvania and the District of New Jersey, defendant

**MARIO JEFFERIES,**
**a/k/a "YOUNG SNOOPY,"**

did knowingly and intentionally possess with the intent to distribute and attempt to possess with the intent to distribute, more than 500 grams, that is approximately 1144 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

66

## COUNT 30

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 23, 2001, in the Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

did knowingly and intentionally distribute more than 50 grams, that is approximately 124.7 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## COUNT 31

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 23, 2001, in the Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

did knowingly and intentionally distribute more than 50 grams, that is approximately 124.7 grams

of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising West Philadelphia High

School, located at 4700 Walnut Street, Philadelphia, Pennsylvania, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(A).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 32

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 14, 2001, in the Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally distribute approximately 249 grams of a mixture or substance

containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

69

## COUNT 33

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 14, 2001, in the Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally distribute approximately 249 grams of a mixture or substance

containing a detectable amount of cocaine, a Schedule II controlled substance, within 1,000 feet

of the real property comprising Roman Catholic High School, located at 301 N. Broad Street,

Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 34

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 8, 2001, in the Eastern District of Pennsylvania, defendants

**BRAHEEM JACKSON,**
**a/k/a "RYAN JACKSON,"**
**a/k/a "RAYMOND GOOD,"**
**a/k/a "ROBERT COOKE,"**
**a/k/a "MIRA ROBINSON,"**
**MARCUS WILLIAMS,**
**a/k/a "JAMAR MOFIELD,"** *Rollerson*
**a/k/a "MARCUS ~~WILLIAMS,~~" and**
**DAVID WEST,**
**a/k/a "MICHAEL ROLLERSON,"**

did knowingly and intentionally possess with the intent to distribute approximately 145 grams of

a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, and approximately 20.7 grams of cocaine, a Schedule II controlled

substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)
and (C).

## COUNT 35

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 8, 2001, in the Eastern District of Pennsylvania, defendants

**BRAHEEM JACKSON,**
**a/k/a "RYAN JACKSON,"**
**a/k/a "RAYMOND GOOD,"**
**a/k/a "ROBERT COOKE,"**
**a/k/a "MIRA ROBINSON,"**
**MARCUS WILLIAMS,**
**a/k/a "JAMAR MOFIELD,"** *Rollerson*
**a/k/a "MARCUS ~~WILLIAMS,~~" and**
**DAVID WEST,**
**a/k/a "MICHAEL ROLLERSON,"**

did knowingly and intentionally distribute approximately 145 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, and

approximately 20.7 grams of cocaine, a Schedule II controlled substance, within 1,000 feet of the

real property comprising St. Ignatius of Loyola School, located at 43rd and Wallace Streets,

Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1),

841(b)(1)(A) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 36

THE GRAND JURY FURTHER CHARGES THAT:

On or about January 24, 2002, in the Eastern District of Pennsylvania, defendant

**RENARD BROWN,**
**a/k/a "NARD,"**

did knowingly and intentionally possess with the intent to distribute approximately 2 grams of a

mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 37

THE GRAND JURY FURTHER CHARGES THAT:

On or about January 24, 2001, in the Eastern District of Pennsylvania, defendant

**RENARD BROWN,**
**a/k/a "NARD,"**

did knowingly and intentionally possess with the intent to distribute approximately 2 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising Andrew Hamilton Elementary School, located at 5640 Spruce Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 38

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 5, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 39

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 5, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance,

within 1,000 feet of the real property comprising William F. Harrity Elementary School, located

at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code,

Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 40

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 6, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 41

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 6, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance,

within 1,000 feet of the real property comprising William F. Harrity Elementary School, located

at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code,

Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 42

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 12, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 43

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 12, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising William F. Harrity Elementary School, located at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 44

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 23, 2002, in the Eastern District of Pennsylvania, defendant

**TIMOTHY JOHNSON,**
**a/k/a "TIMMY,"**

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

81

## COUNT 45

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 23, 2002, in the Eastern District of Pennsylvania, defendant

### TIMOTHY JOHNSON,
### a/k/a "TIMMY,"

did knowingly and intentionally distribute approximately 2 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising William F. Harrity Elementary School, located at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 46

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**VELMA PATTERSON,**

did knowingly and intentionally possess with the intent to distribute approximately 14 grams of a

mixture or substance containing a detectable amount of cocaine, a Schedule II controlled

substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 47

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

did knowingly and intentionally possess with the intent to distribute more than 500 grams, that is

approximately 2 kilograms (2000 grams) of a mixture or substance containing a detectable

amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT 48

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**ANTON TYLER,
a/k/a "ANT,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is approximately 14 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT 49

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**ANTON TYLER,**
**a/k/a "ANT,"**

did knowingly and intentionally possess with the intent to distribute more than 5 grams, that is

approximately 14 grams of a mixture or substance containing a detectable amount of cocaine base

("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising

William F. Harrity Elementary School, located at 5601 Christian Street, Philadelphia,

Pennsylvania, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 50

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally possess with the intent to distribute less than two grams of a

mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

87

## COUNT 51

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**FREDERICK LEACH,**
**a/k/a "FL,"**
**a/k/a "LITTLE FRED,"**

did knowingly and intentionally possess with the intent to distribute less than 2 grams of a

mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, within 1,000 feet of the real property comprising William F. Harrity

Elementary School, located at 5601 Christian Street, Philadelphia, Pennsylvania, in violation of

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT 52

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 25, 1998, at approximately 1:35 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

### RODNEY MURRAY,
### a/k/a "RONALD MILLER,"

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 53

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 27, 1998, at approximately 9:33 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**RODNEY MURRAY ,**
**a/k/a "RONALD MILLER,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 54

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 8, 1998, at approximately 1:53 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 55

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 17, 1998, at approximately 8:05 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 56

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 18, 1998, at approximately 11:56 a.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,
a/k/a "GIOVANNI,"
a/k/a "GIO,"
a/k/a "GIOVANNI LOVE,"
a/k/a "GL,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 57

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 18, 1998, at approximately 8:25 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the price previously charged and the price to be charged for an additional sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 58

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 4, 1998, at approximately 6:30 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 59

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 5, 1998, at approximately 12:10 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 60

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 13, 2000, at approximately 4:40 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES HILL,
a/k/a "JAMES HALL,"
a/k/a "JAMES THOMPSON,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

97

## COUNT 61

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 21, 2001, at approximately 4:30 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**MARIO JEFFERIES,**
**a/k/a "YOUNG SNOOPY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the availability of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 62

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 3, 2001, at approximately 12:50 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendants

**JAMAL MORRIS,**
**a/k/a "DAY DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS"**
**a/k/a "DAYNAN MORRIS" and**
**MARIO JEFFERIES,**
**a/k/a "YOUNG SNOOPY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the availability

of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 63

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 3, 2001, at approximately 1:15 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**CHRISTOPHER WILLIAMS,**
**a/k/a "SHAKY,"**
**a/k/a "SHAKE,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

100

## COUNT 64

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 16, 2001, at approximately 2:30 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**ZACHARY SPENCE,**
**a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 65

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 17, 2001, at approximately 3:00 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**ZACHARY SPENCE,**
**a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

102

## COUNT 66

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 18, 2001, at approximately 11:55 a.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**ZACHARY SPENCE,**
**a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

103

## COUNT 67

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 18, 2001, at approximately 1:35 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY," and**
**ZACHARY SPENCE,**
**a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 68

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 4, 2001, at approximately 1:30 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY," and**
**ZACHARY SPENCE,**
**a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 69

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 10, 2001, at approximately 5:45 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 70

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 11, 2001, at approximately 12:35 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**ZACHARY SPENCE,
a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

107

## COUNT 71

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 11, 2001, at approximately 2:50 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY," and**
**ZACHARY SPENCE,**
**a/k/a "ZACK,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 72

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 22, 2001, at approximately 4:00 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

109

## COUNT 73

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 23, 2001, at approximately 4:00 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine base ("crack"), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

<u>**COUNT 74**</u>

THE GRAND JURY FURTHER CHARGES THAT:

      On or about May 23, 2001, at approximately 4:25 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine base ("crack"), a Schedule II controlled substance.

      All in violation of Title 21, United States Code, Section 843(b).

## COUNT 75

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 4, 2001, at approximately 1:35 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

### ZACHARY SPENCE,
### a/k/a "ZACK,"

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

112

## COUNT 76

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 4, 2001, at approximately 3:35 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**MARIO JEFFERIES,**
**a/k/a "YOUNG SNOOPY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 77

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 12, 2001, at approximately 12:07 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the price and

sale of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

114

## COUNT 78

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 14, 2001, at approximately 5:45 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to arrange for the sale of

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 79

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 2, 2001, at approximately 12:30 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the price for

the sale of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

116

## COUNT 80

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 17, 2001, at approximately 11:50 a.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

### COURTNEY CARTER,
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to discuss a source for

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 81

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 3, 2001, at approximately 1:25 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**JAMES HILL,**
**a/k/a "JAMES HALL,"**
**a/k/a "JAMES THOMPSON,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to discuss sources for cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

118

## COUNT 82

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 3, 2001, at approximately 3:10 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the price for

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 83

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 6, 2001, at approximately 1:40 p.m., at Philadelphia, in the

Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating

the conspiracy described in Count One of this indictment, in violation of Title 21, United States

Code, Section 846, a drug felony, in that the defendant used a telephone to discuss the price for

cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 84

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 11, 2002, at approximately 2:00 p.m., at Philadelphia, in the Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the conspiracy described in Count One of this indictment, in violation of Title 21, United States Code, Section 846, a drug felony, in that the defendant used a telephone to discuss a sale of one-half kilogram of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT 85

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 12, 2001, in the Eastern District of Pennsylvania, defendant

**STEPHANIE HAMMOND,**

managed and controlled the premises located at 1117 E. Rittenhouse Street, Philadelphia,

Pennsylvania, and knowingly and intentionally made available for use these premises for the

purpose of unlawfully manufacturing, storing and distributing cocaine base ("crack"), a Schedule

II controlled substance.

In violation of Title 21, United States Code, Section 856(a)(2).

122

## COUNT 86

THE GRAND JURY FURTHER CHARGES THAT:

From on or about October 24, 1997 through on or about November 14, 2000, in the Eastern District of Pennsylvania, defendant

### VELMA PATTERSON

managed and controlled the premises located at 250 Beverly Drive, Park Lane East Apartments, Apartment # C-22, Philadelphia, Pennsylvania as a lessee, and knowingly and intentionally made available for use these premises for the purpose of unlawfully manufacturing, storing and distributing cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 856(a)(2).

## COUNT 87

THE GRAND JURY FURTHER CHARGES THAT:

From on or about late 1998 through in or about June, 2001, in the Eastern District of Pennsylvania, defendant

### VELMA PATTERSON

managed and controlled the premises located at 215 S. 58th Street, Philadelphia, Pennsylvania as a lessee, and knowingly and intentionally made available for use these premises for the purpose of unlawfully manufacturing, storing and distributing cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 856(a)(2).

124

## COUNT 88

THE GRAND JURY FURTHER CHARGES THAT:

From in or about July, 2001 through on or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

### VELMA PATTERSON

managed and controlled the premises located at 814 Pleasant Road, Yeadon, Pennsylvania as an owner, and knowingly and intentionally made available for use these premises for the purpose of unlawfully manufacturing, storing and distributing cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 856(a)(2).

<u>COUNT 89</u>

<u>CONTINUING CRIMINAL ENTERPRISE (CCE)</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    All of the allegations in paragraphs of Count 1 of the indictment, including the overt acts set forth in Count 1 of this indictment, are realleged and incorporated by reference here.

2.    From in or about a time unknown to the grand jury but beginning in at least the spring of 1997 and continuing through February 26, 2002, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
a/k/a "C,"
a/k/a "C-MURDER,"
a/k/a "JAMAICAN COURTNEY," and
**JAMES PATTERSON,**
a/k/a "GIOVANNI,"
a/k/a "GIO,"
a/k/a "GIOVANNI LOVE,"
a/k/a "GL,"

engaged in a continuing criminal enterprise in that:

(a)    They violated one or more provisions of subchapter I of Chapter 13 of Title 21, United States Code, which are felonies, and such violations were a part of a continuing series of violations of subchapter I of Chapter 13 of Title 21, United States Code, including but not limited to, Counts 1, 2, 9, 12 through 15, 33, 34, 55 through 60, 68 through 70, 72, 78 through 81, and 83 through 85, of this indictment;

(b)    The series of violations described in paragraph (a) were undertaken in

concert with five or more persons, known and unknown to the Grand Jury, with respect to whom defendants occupied positions of organizer, a supervisory position and a position of management; and

    3.  Defendants obtained substantial income and resources from the violations described in paragraphs (a) and (b); and

    4.  Defendants were involved in the distribution of at least 150 kilograms of cocaine and 1.5 kilograms of cocaine base ("crack"), while defendants were principal administrators, organizers, and leaders of the enterprise.

    In violation of Title 21, United States Code, Section 848.

127

## COUNT 90

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about January 30, 1998 through on or about July 24, 2001, in the Eastern

District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
a/k/a "C,"
a/k/a "C-MURDER,"
a/k/a "JAMAICAN COURTNEY,"
**JAMES PATTERSON,**
a/k/a "GIOVANNI,"
a/k/a "GIOVANNI LOVE,"
a/k/a "GL,"
**THOMAS PENNAVARIA, and**
**VELMA PATTERSON**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and intentionally conduct financial transactions affecting interstate commerce, that is,

the leasing of automobiles, which involved the proceeds of a specified unlawful activity, that is a

conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States

Code, Section 846, and a continuing criminal enterprise in violation of Title 21, United States

Code, Section 848, knowing that the transactions were designed in whole and in part to conceal

and disguise the nature, location, source, ownership, and control of the proceeds of this specified

unlawful activity, and that while conducting these financial transactions knew that the monetary

instruments involved in the financial transactions represented the proceeds of some form of

unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS OF THE CONSPIRACY

At all times material to this indictment:

(A)    **COURTNEY CARTER** and **JAMES PATTERSON** sought to conceal the nature, location, source, ownership and control of their drug conspiracy proceeds by acquiring automobiles, by purchase or lease, in the name of others.

(B)    **THOMAS PENNAVARIA** was an automobile merchant doing business in his own name and as "J & B Motor Cars, Inc." and "Leasing Unlimited, Inc." at 3995 William Penn Highway, Murrysville, Pennsylvania, near Pittsburgh, Pennsylvania.   In exchange for lucrative cash payments, **THOMAS PENNAVARIA** assisted **COURTNEY CARTER** and **JAMES PATTERSON** in concealing the nature, location, source, ownership and control of their drug proceeds by leasing and delivering cars to them without disclosing that they were the true parties at interest in the transactions.

(C)    **COURTNEY CARTER, JAMES PATTERSON** and **THOMAS PENNAVARIA** accomplished the objects of the conspiracy through a variety of means, such as:

(1)    **THOMAS PENNAVARIA** would accept possession of automobiles leased by persons known to the grand jury for the purpose of leasing the automobiles to **COURTNEY CARTER, JAMES PATTERSON** and others, without disclosing the name of the true lessee with the Pennsylvania Bureau of Motor Vehicles (BMV) or with the true lessor;

(2)    **THOMAS PENNAVARIA** would list an entity controlled by **THOMAS PENNAVARIA** as the lessee of automobiles actually leased by **COURTNEY CARTER** and **JAMES PATTERSON**;

(3)    **THOMAS PENNAVARIA** paid  a person known to the grand jury for the purpose of using that person's name and credit to purchase a Mercedes Benz automobile for lease to **COURTNEY CARTER**, without disclosing that **COURTNEY CARTER** was the

person who actually paid for and controlled the Mercedes Benz;

(4) **THOMAS PENNAVARIA** arranged for insurance coverage of the automobiles in names other than **COURTNEY CARTER's** and **JAMES PATTERSON's**; and

(5) **THOMAS PENNAVARIA** directed his employees to deliver the cars leased to **COURTNEY CARTER** and **JAMES PATTERSON** by driving the cars hundreds of miles from Murrysville, Pennsylvania, to Philadelphia, Pennsylvania.

(D) **VELMA PATTERSON** was the sister of **JAMES PATTERSON**. **VELMA PATTERSON** assisted **JAMES PATTERSON** in concealing his drug proceeds by depositing cash from drug sales into her bank account and making payments to **THOMAS PENNAVARIA** on **JAMES PATTERSON's** leased automobiles from her checking account, and by purchasing and sending money orders in payment for **JAMES PATTERSON's** automobiles.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, the following overt acts, among others, were performed by the defendants in the Eastern District of Pennsylvania and elsewhere:

1. On or about January 30, 1998, **COURTNEY CARTER** leased a 1997 Lexus LX 450 automobile (the "Lexus") from **THOMAS PENNAVARIA.**

2. On or about January 30, 1998, **COURTNEY CARTER** made a $5,800 cash payment to **THOMAS PENNAVARIA** for the 1997 Lexus LX 450 automobile.

3. **COURTNEY CARTER** made monthly payment to **THOMAS PENNAVARIA** for the 1997 Lexus LX 450 automobile from January through June, 1998.

4.        On or about February 25, 1998, **THOMAS PENNAVARIA** arranged to insure the Lexus in the name of **OMAR BENNETT**.

5.        From in or about April through in or about June, 1998, **JAMAL MORRIS** drove the Lexus in the Philadelphia area.

6.        In or about June, 1998, **THOMAS PENNAVARIA** learned that the Lexus had been impounded while being driven by a drug dealer.

7.        On or about March 31, 1998, **COURTNEY CARTER** leased a 1997 Jaguar automobile (the "1997 Jaguar") from **THOMAS PENNAVARIA**.

8.        On or about March 31, 1998, **COURTNEY CARTER** made a $7,000 cash payment to **THOMAS PENNAVARIA** for the 1997 Jaguar.

9.        On or about March 31, 1998, **COURTNEY CARTER** agreed to make monthly payments of $1,200 for the 1997 Jaguar to **THOMAS PENNAVARIA**.

10.       In or about May, 1999, **JAMES PATTERSON** took over monthly payments for the 1997 Jaguar.

11.       From in or about May, 1999 through in or about June, 2000, **VELMA PATTERSON** made monthly payments for the 1997 Jaguar to **THOMAS PENNAVARIA**.

12.       In or about June, 1998, **THOMAS PENNAVARIA** listed J & B Motors, an entity controlled by **THOMAS PENNAVARIA**, as the lessee of the 1997 Jaguar with Pennsylvania Bureau of Motor Vehicles (the "BMV").

13.       On or about April 4, 1998, **JAMES PATTERSON** leased a 1995 BMW 840 automobile (the "1995 BMW") from **THOMAS PENNAVARIA**.

14.       On or about April 4, 1998, **JAMES PATTERSON** made a $5,000

131

cash payment to **THOMAS PENNAVARIA** for the 1995 BMW.

      15.    On or about April 4, 1998, **JAMES PATTERSON** agreed to make monthly payments of $660 for the 1995 BMW to **THOMAS PENNAVARIA**.

      16.    In or about May, 1998, **THOMAS PENNAVARIA** changed the lessee of record of the 1995 BMW to Leasing Unlimited, Inc., an entity controlled by **THOMAS PENNAVARIA**.

      17.    From in or about May through in or about September, 1998, **VELMA PATTERSON** made monthly payments for the 1995 BMW to **THOMAS PENNAVARIA**.

      18.    On or about July 16, 1998, **JAMES PATTERSON** leased a 1998 Chevy Blazer automobile (the "1998 Blazer") from **THOMAS PENNAVARIA**.

      19.    On or about July 16, 1998, **VELMA PATTERSON,** on behalf of **JAMES PATTERSON,** mailed a $3,000 cash payment to **THOMAS PENNAVARIA** for the 1998 Blazer.

      20.    On or about July 16, 1998, **JAMES PATTERSON** agreed to make monthly payments of $350 for the 1997 Blazer to **THOMAS PENNAVARIA**.

      21.    On or about September 11, 1998, **JAMES PATTERSON** and **THOMAS PENNAVARIA** exchanged the 1998 Blazer for a 1998 Ford Expedition automobile (the "1998 Expedition").

      22.    In or about December, 1998, **THOMAS PENNAVARIA** changed the name of the lessee of the 1998 Expedition with the BMV to "J & B Motor Cars," an entity controlled by **THOMAS PENNAVARIA**.

      23.    In or about July, 1998, **VELMA PATTERSON** obtained insurance for

the 1998 Expedition in her name.

24.     From in or about July, 1998, through in or about August, 2000, **VELMA PATTERSON** transmitted monthly payments for the 1998 Expedition to **THOMAS PENNAVARIA** from Philadelphia.

25.     On or about July 24, 2001, the 1998 Expedition was involved in a shoot out at the Penrose Shopping Center in South Philadelphia.  At or about the same time or shortly thereafter, **THOMAS PENNAVARIA** made efforts to have the car released from impoundment.

26.     On or about June 24, 1999, **COURTNEY CARTER** leased a 2000 Mercedes Benz SL500 automobile (the "SL500") from **THOMAS PENNAVARIA.**

27.     On or about June 24, 1999, **COURTNEY CARTER**, in Philadelphia, made a $25,000 cash payment to **THOMAS PENNAVARIA** for the SL500.

28.     On or about June 24, 1999, **COURTNEY CARTER** agreed to make monthly payments of $1,318 to **THOMAS PENNAVARIA** for the SL500.

29.     On or about June 23, 1999, **THOMAS PENNAVARIA** agreed to pay a person known to the grand jury $5,000 for permission to use the person's name and credit to lease the SL500.

30.     In or about June, 1999, **THOMAS PENNAVARIA** notified BMV that the lessee of the SL500 was "Leasing Unlimited Inc.," an entity controlled by **THOMAS PENNAVARIA.**

31.     In or about January, 2000, **THOMAS PENNAVARIA** leased a Chevrolet Blazer, Pennsylvania license plate BYP-6510 to **CHRISTOPHER WILLIAMS, a/k/a "SHAKY," a/k/a "SHAKE,"** who used another name.  **JAMES PATTERSON** arranged the

133

lease transaction.   The Chevrolet Blazer, Pennsylvania license plate BYP-6510 was delivered to **CHRISTOPHER WILLIAMS** and **JAMES PATTERSON** in Philadelphia.

      32.    In or about February, 2000, **THOMAS PENNAVARIA** failed to change with BMV the registration for the Chevrolet Blazer, Pennsylvania license plate BYP-6510 to **CHRISTOPHER WILLIAMS, a/k/a "SHAKY," a/k/a "SHAKE,"** and left it in the name of a person known to the grand jury.

      33.    On or about February 26, 2000, the Chevrolet Blazer, Pennsylvania license plate BYP-6510, was involved in a shoot out at 38th & Market Streets in Philadelphia, Pennsylvania.   At or about the same time, **THOMAS PENNAVARIA** told a person known to the grand jury, in whose name the automobile was still registered, that he would "take care" of the police inquiries directed to the person known to the grand jury.

      34.    In or about March,  2000, **THOMAS PENNAVARIA** told **COURTNEY CARTER** that he had learned from police inquiries that there had been an informant in the Chevrolet Blazer, Pennsylvania license plate BYP-6510 at the time of the shooting on February 26, 2000.

      35.    In or about July, 2001, **THOMAS PENNAVARIA** made efforts to have the 1998 Expedition previously leased to **JAMES PATTERSON** released from police custody. The car had been involved in a shoot out at the Penrose Plaza Shopping Center on July 24, 2001.

      All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 91

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 30, 1998, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY," and**
**THOMAS PENNAVARIA,**

knowingly and intentionally conducted, and aided and abetted the conduct of, a financial transaction affecting interstate commerce, that is, a payment on the lease of a 1997 Lexus LX450 automobile, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting, this financial transaction, knew that the monetary instruments involved in the financial transaction, approximately $5,800 in United States Currency, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 92 THROUGH 94

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY," and**
**THOMAS PENNAVARIA,**

knowingly conducted, and aided and abetted the conduct of, a financial transactions affecting interstate commerce, that is, payments on the lease of a 1997 Jaguar automobile, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting, these financial transactions, knew that the monetary instruments involved in the financial transactions, described below, represented the proceeds of some form of unlawful activity.

| Count | Date | Monetary Instrument | Amount |
|---|---|---|---|
| 92 | March 31, 1998 | Cash | $7,000 |
| 93 | October 26, 1998 | Check # 96794466<br>Check # 96794467 | $1,000<br>$200 |

136

| Count | Date | Monetary Instrument | Amount |
|-------|------|---------------------|--------|
| 94 | February 24, 1999 | Check # 82193729 | $1,000 |
| | | Check # 82193730 | $1,000 |
| | | Check # 82193731 | $400 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 95 THROUGH 107

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**
**VELMA PATTERSON, and**
**THOMAS J. PENNAVARIA,**

knowingly conducted, and aided and abetted the conduct of, financial transactions affecting interstate commerce, that is, payments on the lease of a 1997 Jaguar automobile, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting, these financial transactions, knew that the monetary instruments involved in the financial transactions, described below, represented the proceeds of some form of unlawful activity.

| Count | Date | Monetary Instrument | Amount |
|---|---|---|---|
| 95 | June 1, 1999 | Check #1971639 | $500 |
|  |  | Check #1971640 | $500 |
|  |  | Check #1971641 | $200 |

138

| Count | Date | Monetary Instrument | Amount |
|-------|------|---------------------|--------|
| 96 | August 1, 1999 | Check #201 | $1,200 |
| 97 | September 2, 1999 | Check # 702722872 | $1,200 |
| 98 | October 5, 1999 | Check # 84210211888<br>Check # 84210211890 | $600<br>$600 |
| 99 | November 5, 1999 | Check # 9294408813<br>Check # 9294408814<br>Check # 9294408815 | $500<br>$500<br>$200 |
| 100 | December 6, 1999 | Check # 954218<br>Check # 954219<br>Check # 954220<br>Check # 954221 | $500<br>$500<br>$100<br>$100 |
| 101 | January 7, 2000 | Check # 301 | $1,200 |
| 102 | February 8, 2000 | Check # 315 | $1,200 |
| 103 | March 11, 2000 | Check # 323 | $1,200 |
| 104 | April 11, 2000 | Check # 336 | $1,200 |
| 105 | May 8, 2000 | Check # 349 | $1,200 |
| 106 | June 12, 2000 | Check # 375 | $1,200 |
| 107 | July 12, 2000 | Check # 387 | $1,200 |

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 108

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 16, 1998, in the Eastern District of Pennsylvania, and elsewhere,

defendants

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**
**VELMA PATTERSON, and**
**THOMAS J. PENNAVARIA,**

knowingly conducted, and aided and abetted the conduct of, a financial transaction affecting

interstate commerce, that is, payment on the lease of a 1998 Chevrolet Blazer automobile, which

involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine

and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, and a

continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing

that the transaction was designed in whole or in part to conceal and disguise the nature, location,

source, ownership, and control of the proceeds of this specified unlawful activity, and that while

conducting, and aiding and abetting, this financial transaction, knew that the monetary

instruments involved in the financial transaction, a $3,000 check, represented the proceeds of

some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

140

## COUNT 109

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 24, 1999, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY," and**
**THOMAS PENNAVARIA,**

knowingly conducted, and aided and abetted the conduct of, a financial transaction affecting interstate commerce, that is, payment on the lease of a 2000 SL500 Mercedes Benz automobile, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting, this financial transactions, knew that the monetary instruments involved in the financial transaction, approximately $25,000 in United States Currency, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

141

## COUNTS 110 THROUGH 112

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

knowingly conducted, and aided and abetted the conduct of, financial transactions affecting interstate commerce, that is, payments on the lease of a 1999 Jaguar automobile, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack") in violation of Title 21, United States Code, Section 846 and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting, these financial transactions, knew that the monetary instruments involved in the financial transactions, described below, represented the proceeds of some form of unlawful activity.

| Count | Date | Monetary Instrument | Amount |
|-------|------|--------------------|--------|
| 110 | May 25, 1999 | Cash | $5,440.05 |
| 111 | June 16, 1999 | Cash | $600 |
| 112 | June 30, 1999 | Check # 116 | $8,500 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 113

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 30, 2000, in the Eastern District of Pennsylvania, and elsewhere, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

knowingly conducted, and aided and abetted the conduct of, a financial transaction affecting interstate commerce, that is, the payment on ~~a lease~~ *the purchase* of a 2000 BMW X5 automobile, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846 and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting this financial transaction, knew that the monetary instruments involved in the financial transaction, a total of approximately $18,269.50 in United States Currency, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

143

## COUNT 114

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 18, 2001, in the Eastern District of Pennsylvania, and elsewhere,

defendants

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL," and**
**VELMA PATTERSON,**

knowingly conducted, and aided and abetted the conduct of, a financial transaction affecting

interstate commerce, that is, the purchase of real property known as 814 Pleasant Road, Yeadon,

Pennsylvania, which involved the proceeds of a specified unlawful activity, that is, a conspiracy

to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code,

Section 846, and a continuing criminal enterprise in violation of Title 21, United States Code,

Section 848, knowing that the transaction was designed in whole or in part to conceal and

disguise the nature, location, source, ownership, and control of the proceeds of this specified

unlawful activity, and that while conducting, and aiding and abetting, this financial transaction,

knew that the monetary instruments involved in the financial transaction, three checks in the

amount of $1,000, $4,500, and $26,000, represented the proceeds of some form of unlawful

activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

144

## COUNTS 115 THROUGH 118

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

and another person known to the grand jury, knowingly conducted, and aided and abetted the conduct of, financial transactions affecting interstate commerce, that is, the issuance of certain checks described below in connection with the purchase of real property known as 4076 Arthurium Avenue, Lantana Florida, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute cocaine and cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, and a continuing criminal enterprise in violation of Title 21, United States Code, Section 848, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of this specified unlawful activity, and that while conducting, and aiding and abetting, these financial transactions, knew that the monetary instruments involved in the financial transactions, in the amounts described below, represented the proceeds of some form of unlawful activity.

| Count | Date | Monetary Instrument | Amount |
|-------|------|---------------------|--------|
| 115 | 3/2/01 | Check # 446 | $11,600 |
| 116 | 4/14/01 | Check # 473 | $3,442 |
| 117 | 7/9/01 | Check # 521 | $10,076 |

118                 11/30/01             Check # 776119121          $40,000

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 119

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 3, 2000, in the Eastern District of Pennsylvania, defendants

**CHRISTOPHER WILLIAMS,**
**a/k/a "SHAKY,"**
**a/k/a "SHAKE," and**
**CHRISTOPHER SMITH,**
**a/k/a "JUGHEAD,"**

knowingly possessed firearms in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

## COUNT 120

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 3, 2000, in the Eastern District of Pennsylvania, defendants

**ALAN CAIN,**
**a/k/a "JEROME VIEW,"**
**a/k/a "BABY AL,"**
**a/k/a "LITTLE AL," and**
**ROBERT HOLMES,**
**a/k/a "BOXING BOB,"**

conspired and agreed together, with each other and with others known and unknown to the grand jury, to knowingly possess firearms in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(o).

## COUNT 121

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2000, in the Eastern District of Pennsylvania, defendants

**CHRISTOPHER SMITH,**
**a/k/a "JUGHEAD," and**
**ALAN CAIN,**
**a/k/a "JEROME VIEW,"**
**a/k/a "BABY AL,"**
**a/k/a "LITTLE AL,"**

knowingly possessed firearms in furtherance of a drug trafficking crime for which they may be

prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine

base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code,

Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

## COUNT 122

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 29, 2001, in the Eastern District of Pennsylvania, defendant

**AMEEN LEE,**
**a/k/a "MEENIE,"**

knowingly possessed a firearm, that is, a Tanfolglio, Model Witness-P, .40 caliber semi-automatic pistol, with an obliterated serial number, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment, and possession of cocaine base with the intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) as charged in Count 27 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

150

## COUNT 123

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 24, 2001, in the Eastern District of Pennsylvania, defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**
**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**
**CHRISTOPHER WILLIAMS,**
**a/k/a "SHAKY,"**
**a/k/a "SHAKE," and**
**KENNETH WILLIAMS,**
**a/k/a "MALIK WILLIAMS,"**

knowingly possessed firearms in furtherance of a drug trafficking crime for which they may be

prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine

base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code,

Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

<u>COUNT 124</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 8, 2001, in the Eastern District of Pennsylvania, defendants

**BRAHEEM JACKSON**
**a/k/a "RYAN JACKSON,"**
**a/k/a "RAYMOND GOOD,"**
**a/k/a "ROBERT COOKE,"**
**a/k/a "MIRA ROBINSON,"**
**MARCUS WILLIAMS,**
**a/k/a "JAMAR MOFIELD,"** *Rollerson*
**a/k/a "MARCUS ~~WILLIAMS,~~" and**
**DAVID WEST,**
**a/k/a "MICHAEL ROLLERSON,"**

knowingly possessed firearms in furtherance of a drug trafficking crime for which they may be

prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine

base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code,

Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

152

## COUNT 125

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 28, 2002, in the Eastern District of Pennsylvania, defendants

**CHRISTOPHER WILLIAMS,**
**a/k/a "SHAKY,"**
**a/k/a "SHAKE,"**

knowingly possessed a firearm in furtherance of a drug trafficking crime for which he may be

prosecuted in a court of the United States, that is, conspiracy to distribute cocaine and cocaine

base ("crack"), Schedule II controlled substances, in violation of Title 21, United States Code,

Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

153

<u>**COUNT 126**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

knowingly possessed a firearm, that is, a Glock Model 19, 9 mm semi-automatic pistol, bearing

serial number BW207, in furtherance of a drug trafficking crime for which he may be prosecuted

in a court of the United States, that is, conspiracy to distribute cocaine and cocaine base

("crack"), Schedule II controlled substances, in violation of Title 21, United States Code,

Sections 846, 841(a)(1) and 841(b)(1)(A), as charged in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

## COUNT 127

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

knowingly possessed a firearm, that is, a Glock Model 32, .357 semi-automatic pistol, bearing

serial number CP0762, in furtherance of a drug trafficking crime for which he may be prosecuted

in a court of the United States, that is, conspiracy to distribute cocaine and cocaine base

("crack"), Schedule II controlled substances, in violation of Title 21, United States Code, Section

846, as charged in Count 1 of this Indictment, and possession with the intent to distribute

cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections

841(a)(1) and 841(b)(1)(B), as charged in Count 47 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

155

## COUNT 128

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**VELMA PATTERSON,**

knowingly possessed a firearm, that is, a Glock Model 36, .45 caliber semi-automatic pistol,

bearing serial number DWN502, loaded with six live rounds, in furtherance of a drug trafficking

crime for which she may be prosecuted in a court of the United States, that is, conspiracy to

distribute cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21,

United States Code, Section 846, as charged in Count 1 of this Indictment, and possession with

the intent to distribute cocaine base ("crack"), a Schedule II controlled substance, in violation of

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), as charged in Count 46 of this

Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

156

<u>**COUNT 129**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

knowingly possessed a stolen firearm, that is, a Glock Model 19, 9 mm semi-automatic pistol,

bearing serial number BW207, which was moving as, which was part of, and which constituted

interstate commerce, knowing and having reasonable cause to believe the firearm was stolen.

In violation of Title 18, United States Code, Section 922(j).

<u>COUNT 130</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 2, 1997, in the Eastern District of Pennsylvania, defendant

**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate commerce, a loaded firearm, that is, a Smith & Wesson, Model 469, 9 mm semi-automatic pistol with a partially obliterated serial number, with approximately 10 live rounds of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

158

## COUNT 131

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 19, 1997 in the Eastern District of Pennsylvania, defendant

**ABDUL HOWARD,**
**a/k/a "RODNEY BELL,"**
**a/k/a "SALEEM RACKMAN,"**
**a/k/a "ABDUL TALLEY,"**

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one

year, knowingly possessed in and affecting interstate commerce, a loaded firearm, that is, an

Astra, Model 75, .45 caliber semi-automatic pistol, serial number 15704, loaded with

approximately 7 live rounds of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

<u>COUNT 132</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 17, 2000, in the Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one

year, knowingly possessed in and affecting interstate commerce, a loaded firearm, that is, a Ruger

Model P95DC, 9 mm semi-automatic pistol with an obliterated serial number, with

approximately 14 live rounds of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

160

<u>COUNT 133</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 8, 2001, in the Eastern District of Pennsylvania, defendants

**BRAHEEM JACKSON**
**a/k/a "RYAN JACKSON,"**
**a/k/a "RAYMOND GOOD,"**
**a/k/a "ROBERT COOKE,"**
**a/k/a "MIRA ROBINSON,"**
**MARCUS WILLIAMS,**
**a/k/a "JAMAR MOFIELD,"** *Rollerson*
**a/k/a "MARCUS ~~WILLIAMS~~," and**
**DAVID WEST,**
**a/k/a "MICHAEL ROLLERSON,"**

having each been convicted in a court of a crime punishable by imprisonment for a term

exceeding one year, knowingly possessed in and affecting interstate commerce, loaded firearms,

that is, (1) one Glock Model 36, .45 caliber semi-automatic pistol, with an obliterated serial

number, loaded with five live rounds; (2) one Taurus International Model R462, .38 caliber

revolver, serial number RI79367, loaded with five live rounds; (3) one Smith & Wesson 357

Magnum revolver, Model 686, serial number CBB7503, loaded with two live rounds; (4) one

Smith & Wesson Model US Army 1917, .45 caliber semi-automatic pistol, serial number 42860

loaded with five live rounds; and (5) one Harrington and Richardson Model 999 Sportsman, .22

caliber revolver, serial number AN 62424 loaded with seven live rounds.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT 134

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**JAMAL MORRIS,**
**a/k/a "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS,"**

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one

year, knowingly possessed in and affecting interstate commerce, a loaded firearm, that is, a Glock

Model 32, .357 semi-automatic pistol, serial number CP0762, with approximately 8 live rounds

of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

162

<u>**COUNT 135**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in the Eastern District of Pennsylvania, defendant

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one

year, knowingly possessed in and affecting interstate commerce, a loaded firearm, that is, a Glock

Model 19, 9 mm semi-automatic pistol, serial number BW207, with approximately 15 live

rounds of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

## NOTICE OF FORFEITURE: DRUG VIOLATIONS

**THE GRAND JURY FURTHER CHARGES THAT:**

The factual allegations contained in Count 1 of this indictment are incorporated by reference.

As a result of the violations of Title 21, United States Code, Sections 846 and 841(a)(1), 860(a) and (c), 856(a)(2), 843(b) and 848(b) as set forth in Counts 1 through 89, the defendants

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**
**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**
**JAMAL MORRIS,**
**a/k/a/ "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS;"**
**JERMAINE SINGLETON,**
**a/k/a "BRIAN DAVIS,"**
**a/k/a "JAB,"**
**RAKYYM HETHERINGTON,**
**a/k/a "RAK,"**
**OMAR BENNETT,**
**ZACHARY SPENCE,**
**a/k/a "ZACK,"**
**CHRISTOPHER WILLIAMS,**
**a/k/a "SHAKY,"**
**a/k/a "SHAKE,"**
**CHRISTOPHER SMITH,**
**a/k/a "JUGHEAD,"**
**JAMES HILL,**
**a/k/a "JAMES HALL,"**

a/k/a "JAMES THOMPSON,"
KENNETH WILLIAMS,
a/k/a "MALIK WILLIAMS,"
ANTON TYLER,
a/k/a "ANT,"
M.B. TERRELL,
a/k/a "MARK TERRELL,"
a/k/a "MARC TERRELL,"
a/k/a "MARK MILLER,"
a/k/a "KEVIN MILLER,"
MARIO JEFFERIES,
a/k/a "YOUNG SNOOPY,"
RASOOL LEWIS,
a/k/a "SOOL,"
a/k/a "MAKEL SHABAZZ,"
a/k/a "AL-KAREM LEWIS,"
VELMA PATTERSON,
STEPHANIE HAMMOND,
JOHN DAIR,
a/k/a "JOHN BOYD,"
a/k/a "JOHN BOY,"
a/k/a "JB,"
TRACEY TEAGLE,
JOHN MINGIA,
a/k/a "JOHN THOMPSON,"
a/k/a "MAIJON MINGIA,"
ALAN CAIN,
a/k/a "JEROME VIEW,"
a/k/a "BABY AL,"
a/k/a "LITTLE AL,"
ABDUL HOWARD,
a/k/a "RODNEY BELL,"
a/k/a "SALEEM RACKMAN,"
a/k/a "ABDUL TALLEY,"
ROBERT HOLMES,
a/k/a "BOXING BOB,"
NATHANIEL MONTGOMERY,
a/k/a "SHU SHU,"
RENARD BROWN,
a/k/a "NARD,"
RODNEY MURRAY,
a/k/a "RONALD MILLER,"
RAABITAH REYNOLDS,

165

a/k/a "RAABITAH GRAY,"
a/k/a "ROBERT REYNOLDS,"
a/k/a "ROBERT JOHNSON,"
TYREIK GOLDEN,
KAREEM SANDERS,
a/k/a "REEM,"
AMEEN LEE,
a/k/a "MEENIE,"
FREDERICK LEACH,
a/k/a "FL,"
a/k/a "LITTLE FRED,"
TIMOTHY JOHNSON,
a/k/a "TIMMY," and
EDGAR LAWRENCE
BRAHEEM JACKSON,
a/k/a "RYAN JACKSON,"
a/k/a "RAYMOND GOOD,"
a/k/a "ROBERT COOKE,"
a/k/a "MIRA ROBINSON,"
MARCUS WILLIAMS,
a/k/a "JAMAR MOFIELD,"
a/k/a "MARCUS ROLLERSON,"
DAVID WEST,
a/k/a "MICHAEL ROLLERSON"

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, the

following property:

    1.    All property constituting, or derived from, any proceeds the defendants obtained,

directly or indirectly, as the result of such violation, including but not limited to:

        A.    $18,000,000 in United States currency, including but not limited to:
U.S. currency in the approximate amount of $18,020 found in 1801
Buttonwood Street, Apartment 1203, Philadelphia, PA; U.S. currency in
the approximate amount of $6,500 found in 8460 Limekiln Pike,
Apartment 505-1, Philadelphia, PA; U.S. currency in the approximate
amount of $7,450 found in 7600 Stenton Avenue, Apartment 16-E,
Philadelphia, PA; U.S. currency in the approximate amount of $131,000
found in 814 Pleasant Road, Yeadon, PA; U.S. currency in the
approximate amount of $135,000 found in safe deposit box number
LB3057, Bryn Mawr Trust Co., 801 Lancaster Avenue, Bryn Mawr, PA;

166

U.S. currency in the approximate amount of $50,000 found in safe deposit box number D-93, First Union Bank, Center Square Branch, 15th and Market Streets, Philadelphia, PA.

B.    Real Property known as 814 Pleasant Road, Yeadon, PA.

C.    Real property known as 4076 Arthurium Road, Lake Worth, Florida.

D.    One 2000 BMW X-5, VIN: WBAFB3347YLH03402, PA License Tag Number DKB 2030.

E.    One 1999 Mercedes Benz CLK, VIN: WDBLJ70G7XF082900, NJ License Tag Number 9854 CC.

F.    One 2001 Ford F-150 Harley Davidson Edition Pick Up, VIN: 1FTRW07LX1KA42588, PA License Tag Number YCE 8222.

G.    One 1999 Ford Expedition, VIN: 1FMPU18L2XLA33304, PA License Tag Number DGH 2795.

H.    One 1998 Ford Expedition, VIN: 1FMRU18W7WLA36300, PA License Tag Number DTL 7072.

I.    One 2000 Volvo convertible, VIN: YV1NC56D4YJ009322, PA License Tag Number DXS 6599.

J.    One 1999 Mercedes Benz CLK, VIN: WDBLJ70G3XF054401, PA License Tag Number DRK 7255.

2.    All property of the defendants which was used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, these violations, including but not limited to:

a.    Parcels of real estate located at: 814 Pleasant Road, Yeadon, PA; 4076 Arthurium Road, Lake Worth, Florida; 5549 Osage Avenue, Philadelphia, PA; 1117 E. Rittenhouse Street, Philadelphia, PA.

b.    U.S. currency in the approximate amount of $18,020 found in 1801 Buttonwood Street, Apartment 1203, Philadelphia, PA.

c.    U.S. currency in the approximate amount of $6,500 found in 8460

167

Limekiln Pike, Apartment 505-1, Philadelphia, PA.

d.    U.S. currency in the approximate amount of $7,450 found in 7600 Stenton Avenue, Apartment 16-E, Philadelphia, PA.

e.    U.S. currency in the approximate amount of $131,000 found in 814 Pleasant Road, Yeadon, PA.

f.    U.S. currency in the approximate amount of $135,000 found in safe deposit box number LB3057, Bryn Mawr Trust Co., 801 Lancaster Avenue, Bryn Mawr, PA.

g.    U.S. currency in the approximate amount of $50,000 found in safe deposit box number D-93, First Union Bank, Center Square Branch, 15th and Market Streets, Philadelphia, PA.

h.    One 2000 BMW X-5, VIN: WBAFB3347YLH03402, PA License Tag Number DKB 2030.

i.    One 1999 Mercedes Benz CLK, VIN: WDBLJ70G7XF082900, NJ License Tag Number 9854 CC.

j.    One 2001 Ford F-150 Harley Davidson Edition Pick Up, VIN: 1FTRW07LX1KA42588, PA License Tag Number YCE 8222.

k.    One 1999 Ford Expedition, VIN: 1FMPU18L2XLA33304, PA License Tag Number DGH 2795.

l.    One 1998 Ford Expedition, VIN: 1FMRU18W7WLA36300, PA License Tag Number DTL 7072.

m.    One 2000 Volvo convertible, VIN: YV1NC56D4YJ009322, PA License Tag Number DXS 6599.

n.    One 1999 Mercedes Benz CLK, VIN: WDBLJ70G3XF054401, PA License Tag Number DRK 7255.

o.    One Glock Model 19, 9mm semi-automatic pistol, serial number BW207, with two clips, holding 15 and 30 rounds, respectively, and ammunition.

p.    One Glock Model 32, .357 caliber semi-automatic pistol, serial number CP0762, with clip and ammunition.

q.    One Glock Model 36, .45 caliber semi-automatic pistol, serial number DWN502, with clip and ammunition.

r.    One Taurus Model PT 111, 9mm semi-automatic pistol, serial number TTD 96145, with clip and ammunition.

s.    One Glock Model 36, .45 caliber semi-automatic pistol, with an obliterated serial number, loaded with clip and ammunition.

t.    One Taurus International Model R462, .38 caliber revolver, serial number RI79367, with clip and ammunition.

u.    One Smith & Wesson 357 Magnum revolver, Model 686, serial number CBB7503, loaded with clip and ammunition.

v.    One Smith & Wesson Model US Army 1917, .45 caliber semi-automatic pistol, serial number 42860, with clip and ammunition.

w.    One Harrington and Richardson Model 999 Sportsman, .22 caliber revolver, serial number AN 62424, with clip and ammunition.

## SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture, as a result of

any act or omission of

**COURTNEY CARTER,**
**a/k/a "C,"**
**a/k/a "C-MURDER,"**
**a/k/a "JAMAICAN COURTNEY,"**
**JAMES PATTERSON,**
**a/k/a "GIOVANNI,"**
**a/k/a "GIO,"**
**a/k/a "GIOVANNI LOVE,"**
**a/k/a "GL,"**
**JAMAL MORRIS,**
**a/k/a/ "DAY-DAY,"**
**a/k/a "DAY DOLLARS,"**
**a/k/a "DAWAN MORRIS,"**
**a/k/a "DAYNAN MORRIS;"**
**JERMAINE SINGLETON,**
**a/k/a "BRIAN DAVIS,"**

169

a/k/a "JAB,"
RAKYYM HETHERINGTON,
a/k/a "RAK,"
OMAR BENNETT,
ZACHARY SPENCE,
a/k/a "ZACK,"
CHRISTOPHER WILLIAMS,
a/k/a "SHAKY,"
a/k/a "SHAKE,"
CHRISTOPHER SMITH,
a/k/a "JUGHEAD,"
JAMES HILL,
a/k/a "JAMES HALL,"
a/k/a "JAMES THOMPSON,"
KENNETH WILLIAMS,
a/k/a "MALIK WILLIAMS,"
ANTON TYLER,
a/k/a "ANT,"
M.B. TERRELL,
a/k/a "MARK TERRELL,"
a/k/a "MARC TERRELL,"
a/k/a "MARK MILLER,"
a/k/a "KEVIN MILLER,"
MARIO JEFFERIES,
a/k/a "YOUNG SNOOPY,"
RASOOL LEWIS,
a/k/a "SOOL,"
a/k/a "MAKEL SHABAZZ,"
a/k/a "AL-KAREM LEWIS,"
VELMA PATTERSON,
STEPHANIE HAMMOND,
JOHN DAIR,
a/k/a "JOHN BOYD,"
a/k/a "JOHN BOY,"
a/k/a "JB,"
TRACEY TEAGLE,
JOHN MINGIA,
a/k/a "JOHN THOMPSON,"
a/k/a "MAIJON MINGIA,"
ALAN CAIN,
a/k/a "JEROME VIEW,"
a/k/a "BABY AL,"
a/k/a "LITTLE AL,"

170

ABDUL HOWARD,
a/k/a "RODNEY BELL,"
a/k/a "SALEEM RACKMAN,"
a/k/a "ABDUL TALLEY,"
ROBERT HOLMES,
a/k/a "BOXING BOB,"
NATHANIEL MONTGOMERY,
a/k/a "SHU SHU,"
RENARD BROWN,
a/k/a "NARD,"
RODNEY MURRAY,
a/k/a "RONALD MILLER,"
RAABITAH REYNOLDS,
a/k/a "RAABITAH GRAY,"
a/k/a "ROBERT REYNOLDS,"
a/k/a "ROBERT JOHNSON,"
TYREIK GOLDEN,
KAREEM SANDERS,
a/k/a "REEM,"
AMEEN LEE,
a/k/a "MEENIE,"
FREDERICK LEACH,
a/k/a "FL,"
a/k/a "LITTLE FRED,"
TIMOTHY JOHNSON,
a/k/a "TIMMY," and
EDGAR LAWRENCE
BRAHEEM JACKSON,
a/k/a "RYAN JACKSON,"
a/k/a "RAYMOND GOOD,"
a/k/a "ROBERT COOKE,"
a/k/a "MIRA ROBINSON,"
MARCUS WILLIAMS,
a/k/a "JAMAR MOFIELD,"
a/k/a "MARCUS ROLLERSON,"
DAVID WEST,
a/k/a "MICHAEL ROLLERSON"

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third party;

(3)    has been placed beyond the jurisdiction of the court;

      (4)     has been substantially diminished in value; or

      (5)     has been commingled with other property which cannot be divided

           without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek, up to the value of the above forfeitable property, forfeiture of any other property of the

defendants.

      All pursuant to Title 21, United States Code, Section 853.

172

## NOTICE OF FORFEITURE: MONEY LAUNDERING

**THE GRAND JURY FURTHER CHARGES THAT:**

     1.    As a result of the violations of Title 18, United States Code, Section 1956, set forth in Counts 90 through 119 of this Indictment, the defendants

**COURTNEY CARTER,**
a/k/a "C,"
a/k/a "C-MURDER,"
a/k/a "JAMAICAN COURTNEY,"
**JAMES PATTERSON,**
a/k/a "GIOVANNI,"
a/k/a "GIOVANNI LOVE,"
a/k/a "GL,"
**THOMAS PENNAVARIA, and**
**VELMA PATTERSON**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, any and all property, real and personal, involved in such offenses, and any property traceable to such property, including, but not limited to, the sum of $170,627 in monetary instruments, as set forth in Counts 90 through 119, and:

    a.    a 2000 SL500 Mercedes Benz automobile, VIN WDBNG75J0YA005473

    b.    a 1997 Lexus Model LX450 automobile, VIN JT6HJ88J1V017168

    c.    a 1996 Range Rover automobile, VIN SALPV1244TA339308

    d.    a 1998 Dodge Ram truck, VIN 3B7HF12Y3WG127713

    e.    a 1998 Acura TL automobile, VIN JH4UA3647WC004708

    f.    a 1997 Jaguar XK8 automobile, VIN SAJGX2748VC017943

    g.    a 1995 BMW 840 automobile, VIN WBAEF6324SCC89891

    h.    a 1998 Chevrolet Blazer automobile, VIN 1GNDT13WOWK112736

   i.  a 1998 Ford Expedition automobile, VIN FMRU18W7WLA36300

   j.  a 2000 BMW X5 automobile, VIN WBAFB3347YLH03402

   k.  a 1999 Jaguar automobile, SAJDA01D5YGL03733

   l.  real property known as 814 Pleasant Road, Yeadon, Pennsylvania

   m.  real property known as 4076 Arthurium Avenue, Lantana, Florida

2.  If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided
     without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to

174

the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

_____

FOREPERSON


_____
PATRICK L. MEEHAN
United States Attorney

**First Assistant U.S. Attorney**

175

No. _____

# UNITED STATES DISTRICT COURT

*Eastern District of Pennsylvania*

*Criminal Division*

THE UNITED STATES OF AMERICA

vs.

**COURTNEY CARTER, a/k/a "C-Murder," a/k/a "Jamaican Courtney," a/k/a "C", et al.**

## SUPERSEDING INDICTMENT No. 02-172

21 U.S.C. § 846(Conspiracy to distribute more than 5 kilograms of cocaine and more than 50 grams of cocaine base ("crack")- 1 Count)

21 U.S.C. § 848(b)(Continuing criminal enterprise - 1 Count)

21 U.S.C. § 841(a)(1)(Distribution or possession with intent to distribute cocaine or cocaine base ("crack") - 27 Counts)

21 U.S.C. § 860(a)(Distribution or possession with intent to distribute cocaine or cocaine base ("crack") within 1,000 feet of a school - 20 Counts)

21 U.S.C. § 860(c)(Employing children to distribute drugs near schools and playgrounds - 2 Counts)

21 U.S.C. § 843(b)(Use of a communication facility in furtherance of a drug crime - 33 Counts)

21 U.S.C. § 856(Establishment of a manufacturing facility - 4 Counts)

18 U.S.C. § 924(c)(Use of a firearm during commission of a drug crime - 10 Counts)

18 U.S.C. § 924(o)(Conspiracy to use a firearm during commission of a drug crime - 1 Count)

18 U.S.C. § 922(j)(Possession of a stolen firearm - 1 Count)

18 U.S.C. § 922(g)(1)(Possession of a firearm by a convicted felon - 6 Counts)

18 U.S.C. § 1956(h)(Conspiracy to commit money laundering - 1 Count)

18 U.S.C. § 1956(a)(1)(B)(i)(Money Laundering - 28 Counts)

18 U.S.C. § 2(Aiding and Abetting)

21 U.S.C. § 853(Criminal Forfeiture)

18 U.S.C. § 982(Criminal Forfeiture)



*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* _____

_____

*Clerk*

_____

*Bail, $* _____